No. 87-021

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

STATE OF MONTANA, CITY OF BOZEMAN,

       Plaintiff and Respondent,

  -vs-

ROBERT PETERSON,

       Defendant and Appellant.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Respondent:

        Honorable Mike Greely, Attorney General,
        Dorothy McCarter, Assistant Attorney General,
        Helena, Montana,
        Bruce Becker, Bozeman City Attorney,
        Bozeman, Montana.

    For Appellant:

        Larry Jent, Bozeman, Montana.

---

            Submitted on Briefs:  March 26, 1987

               Decided:  July 20, 1987

Filed:   JUL 20 1987

*Ethel M. Harrison*
_____
           Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


Defendant was convicted of driving under the influence of alcohol by the District Court, Eighteenth Judicial District, Gallatin County. We reverse and dismiss the judgment of the District Court.

At approximately 2:00 a.m., on March 23, 1985, Robert D. Peterson was arrested in Bozeman, Montana, for driving under the influence of alcohol. He made a motion to dismiss in Bozeman City Court on the grounds that the arresting officer refused to allow him to take a blood test. The City Court denied the motion and Peterson pled guilty on June 25, 1985. The same day, Peterson filed a notice of appeal to the District Court for a trial de novo. On September 6, 1985, Peterson again made a motion to dismiss on the grounds he had been denied due process of law by the officer's refusal to allow him to take a blood test.

The motion was scheduled for hearing September 27, but the parties stipulated for a continuance until October 18, 1985. The hearing on the motion was held October 25 and taken under advisement by the District Court. No further action was taken until March 28, 1986, when the State of Montana filed a motion to set a trial date.

On April 11, 1986, the District Court denied Peterson's motion to dismiss and set a trial date of May 30, 1986. On May 21, 1986, Peterson filed a second motion to dismiss on the grounds that he had been denied his constitutional right to a speedy trial. The District Court denied this motion and trial was held May 30. The court again took the matter under advisement until September 30, 1986, when the court found Peterson guilty of driving under the influence of alcohol.

Peterson was sentenced to pay a fine of $300, to spend 24 hours in the Gallatin County Detention Center, to attend court school, and to have his driver's license suspended for six months. Peterson now appeals this conviction, raising the following issues:

1. Whether a person suspected of driving under the influence of alcohol who refuses a breath test is entitled to an independent blood test at his or her own expense?

2. Whether the District Court's delay in considering the defendant's motions denied him his constitutional right to a speedy trial?

The first issue has been decided by this Court in State v. Swanson (Mont. 1986), 722 P.2d 1155, 1157, 43 St.Rep. 1329, 1332, where we held "one accused of a crime involving intoxication has a right to obtain an independent blood test to establish his sobriety regardless of whether he submits to a police designated test." The question we decide here today is whether the Swanson rule is to be applied retroactively.

Generally, judicial decisions will apply retroactively. Solem v. Stumes (1984), 465 U.S. 638, 642, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579, 586. The United States Supreme Court has stated that "at a minimum, 'all "new" rules of constitutional law must . . . be applied to all those cases which are still subject to direct review . . . at the time the "new" decision is handed down.'" Shea v. Louisiana (1985), 470 U.S. 51, 57, 105 S.Ct. 1065, 1069, 84 L.Ed.2d 38, 45 (quoting United States v. Johnson (1982), 457 U.S. 537, 548, 102 S.Ct. 2579, 2586, 73 L.Ed.2d 202, 212. Complete retroactive application of a new constitutional rule is most appropriate where the rule is designed to enhance the accuracy of criminal trials. Solem v. Stumes, 465 U.S. at 643, 104 S.Ct. at 1342, 79 L.Ed.2d at 587. The basic principles of retroactivity in criminal cases have been

enunciated in Linkletter v. Walker (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 and Tehan v. United States ex rel. Shott (1966), 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453. The factors to be considered in applying a new rule retroactively or prospectively have been set forth by this Court in LaRoque v. State (1978), 178 Mont. 315, 319, 583 P.2d 1059, 1061:

> 1. Does the decision in question either establish a new principle of law by overruling established precedent on which the litigants relied or decide an issue of first impression whose resolution was not clearly foreshadowed?

> 2. What are the merits of each case?

>> A. What is the history, purpose and effect of the new principle of law?

>> B. Whether retroactive application will further or retard the new principle's operation?

> 3. Whether substantial inequity will result from retroactive application?

The first factor we consider is whether the Swanson rule overruled established precedent or decided an issue of first impression whose resolution was not clearly foreshadowed. In Swanson, this Court interpreted § 61-8-405(2), MCA, as granting to the defendant the right to obtain an independent blood test to establish his or her sobriety regardless of whether the defendant submitted to a police designated test. Swanson, 722 P.2d at 1157, 43 St.Rep. at 1331-32. In that case, the defendant was allowed to obtain a blood test at his own expense after refusing the breath test requested by the police. However, the blood sample was not properly preserved and therefore could not be analyzed. In this case, defendant Peterson refused to take the breath test requested by the arresting officer and demanded to make a telephone call to

- 4 -

his attorney and to obtain a blood test. The police told him if he did not take the breath test, he could neither make a telephone call nor obtain a blood test. The defendant was then placed in a holding cell until the afternoon of the same day.

In denying defendant's motion to dismiss for lack of due process, the District Court may have relied on State v. Logan (Mont. 1985), 705 P.2d 123, 42 St.Rep. 1317.[1] In Logan, the issue before this Court was whether the requirement under § 61-8-402(3), MCA, that all persons arrested for suspicion of driving under the influence of alcohol must take a breath test before being allowed a blood test was a denial of due process. This Court held there was no denial of due process, absent any evidence of prejudice in the record of the defendant's ability to defend himself. While Logan construed § 61-8-402(3), MCA, and Swanson construed § 61-8-405(2), MCA, it is clear that the Swanson holding overruled the Logan holding which denied a defendant the right to obtain a blood test even after refusing the chemical test initially designated by the police officer.

The second factor we look to is the history, purpose and effect of the Swanson rule and whether retroactive application will further or retard its operation. In deciding Swanson, this Court relied on the Arizona Court of Appeals' interpretation of a statute identical to § 61-8-405(2), MCA, in Smith v. Cada (Ariz. Ct. App. 1977), 562

---

1   The District Court in its order denying the motion cited State v. Christopherson (Mont. 1985), 705 P.2d 121, 42 St.Rep. 1320. However, that case involved whether the refusal of a breath test and a request for an independent blood test constituted a refusal under § 61-8-402, MCA.

P.2d 390. Both this Court and the Arizona Court found that refusal by the police to allow a defendant a blood test at his or her own expense was an unconstitutional restraint on the right of a criminal accused to attempt to obtain independent evidence of his or her innocence. Thus, the purpose of the rule is to assure a defendant's due process right to obtain exculpatory evidence. The effect of the rule is to insure an accused is not wrongfully convicted by suppressing evidence which may be favorable to him or her.

We next consider whether retroactive application will further or retard operation of the Swanson rule. Retroactive effect should be given to new constitutional rules "whose major purpose is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." United States v. Johnson, 457 U.S. at 544, 102 S.Ct. at 2584, 73 L.Ed.2d at 210 (quoting Williams v. United States (1971), 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388, 395). Since a blood test relates directly to fact-finding and may provide evidence of a defendant's sobriety, retroactive application of the Swanson rule will further its operation. In this case, although the police informed Peterson he could call an attorney and obtain "another" test, he was not allowed to do so until some ten hours after his arrest. This interference with the defendant's right to obtain exculpatory evidence is the type of denial of due process against which the Swanson rule was designed to protect.

Finally, we examine whether substantial inequity will result from retroactively applying the Swanson rule. The State argues it would be inequitable to apply the rule retroactively since the law under Logan was relied upon by law enforcement officers and district court judges. However,

no empirical evidence is given in support of this contention. The police in this case informed Peterson he had the right to consult an attorney and to have another blood test at his own expense, but they then prevented him from doing so by placing him in a holding cell for over ten hours. The District Court relied on State v. Christopherson (Mont. 1985), 705 P.2d 121, 42 St.Rep. 1320, for the rule that a police officer has the right to choose the initial test. A police officer's choice of the initial test to be administered does not obviate the defendant's right to refuse that test and request another. Further, the decision in Swanson which "established" the right to obtain an independent blood test was based on a factual situation where the police had allowed the defendant to obtain an independent blood test, but then failed to preserve the sample. So it cannot be said that the uniform interpretation of § 61-8-405(2) in this state was to deny a defendant an independent blood test.

For the purpose of clarification of our rule in Swanson that one accused of a crime involving intoxication is entitled to obtain a blood test, it should be explained that the rule applies only when (1) the defendant has timely claimed the right to a blood test, and (2) the officer or officers do not unreasonably impede the defendant's right to obtain a blood test. If a blood test of the defendant is unavailable through no unreasonable acts of an officer or officers, the Swanson rule does not apply.

We therefore reverse the order of the District Court and order that the defendant's motion to dismiss on the grounds of lack of due process be granted. For the foregoing reasons, we do not reach the second issue of speedy trial.

John C. Sheehy
_____
Justice

- 7 -

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_Fred J. Weber_

_L. C. Gulbrandson_

_William E. Hunt_

_R. C. McDonough_
Justices