No. 94-302

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

CITY OF WHITEFISH,

    Plaintiff and Respondent,

  -vs-

CAROL PINSON,

    Defendant and Appellant.

FILED

MAY 11 1995

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted Lympus, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

      Stephen J. Nardi; Sherlock & Nardi, Kalispell,
Montana

    For Respondent:

      Hon. Joseph P. Mazurek, Attorney General; Jennifer
Anders, Ass't Attorney General, Helena, Montana

Submitted on Briefs:  February 16, 1995

Decided:  May 11, 1995

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Carol Pinson (Pinson) appeals from the Order of Judgment and Sentence convicting her of a violation of § 61-E-401, MCA, entered by the Eleventh Judicial District Court, Flathead County. We reverse, holding that the District Court erred in denying Pinson's motion to dismiss the charge.

The specific issue before us is whether Pinson's due process rights were violated by the failure of the City of Whitefish to comply with a request for an independent blood test.

In the early morning hours of December 10, 1992, Officer Geno Cook (Cook) of the City of Whitefish Police Department (City) initiated a traffic stop of Pinson's vehicle. He ultimately placed Pinson under arrest and transported her to the City police station for booking. Cook videotaped the booking procedure. Specific facts relating to events occurring during the videotaped booking procedure are set forth in our discussion of the issue.

Cook issued a citation charging Pinson with driving under the influence of alcohol in violation of § 61-8-401, MCA. Pinson moved the City Court of Whitefish to dismiss the charge, on the basis that her due process rights were violated by Cook's failure to take her to obtain a blood test as she requested. The City Court denied the motion and **ultimately** found Pinson guilty of the charged offense. Pinson appealed to the District Court.

Pinson filed a motion to dismiss in the District Court on essentially the same grounds she raised in the City Court. Both Pinson and the City briefed the issue and the District Court held

2

an evidentiary hearing on Pinson's motion.  The videotape was admitted into evidence.  Pinson testified on her own behalf, as did her friend Alyse Ryan (Ryan), who had been present at the police station on the morning of Pinson's arrest.  Cook testified on the City's behalf.  The court viewed the videotape after the hearing was concluded.

The District Court denied Pinson's motion to dismiss by minute entry and subsequently found her guilty of the charged offense. The court imposed sentence and stayed execution of the judgment of conviction pending appeal.  Pinson appeals.

> Were Pinson's due process rights violated by the City's failure to comply with a request for an independent blood test?

Pinson alleges that she requested a blood test during the booking procedure, Cook said the test would be obtained, and the blood test was not obtained.  Relying primarily on State v. Swanson (1986), 222 Mont. 357, 722 P.2d 1155, and State v. Peterson (1987), 227 Mont. 418, 739 P.2d 958, she argues that her due process right to attempt to obtain exculpatory evidence was violated.  Contending that Pinson did not make a timely request for a blood test, the City asserts that the District Court properly denied Pinson's motion to dismiss pursuant to Peterson and State v. Klinkhammer (1993), 256 Mont. 275, 846 P.2d 1008.

The law is clear that a person accused of a criminal offense has a constitutional right to attempt to obtain exculpatory evidence.  Klinkhammer, 846 P.2d at 1010-1011; citing Swanson, 722 P.2d at 1157.  When the offense charged involves intoxication, we

3

held in <u>Swanson</u> that this right encompasses the accused's right "to obtain an independent blood test to establish his sobriety regardless of whether he submits to a police designated test." <u>Swanson,</u> 722 P.2d at 1157.

We clarified the <u>Swanson</u> rule in <u>Peterson.</u> There, we determined that the rule applies only when (1) the accused **timely** asserts the right to an independent blood test; and (2) the law enforcement officer does not unreasonably impede the right to obtain the test. <u>Peterson,</u> 739 P.2d at 961. In the case presently before us, only the first <u>Peterson</u> criterion is at issue.

We apply the clearly erroneous standard in reviewing a court's finding regarding whether an accused made **a timely** request for an independent test. <u>See</u> <u>Klinkhammer,</u> 846 P.2d at 1010; citing State v. Cope (1991), 250 Mont. 387, 819 P.2d 1280. Here, the District Court denied Pinson's motion via minute entry and without entering findings or providing its rationale. Because the matter was submitted to the court solely on the basis of whether Pinson timely requested an independent blood test, however, the District Court necessarily found that **no timely** request was made. Thus, we examine the record before us to determine whether the court's finding is clearly erroneous.

The record regarding Pinson's request for an independent blood test reflects the following. The videotape of the booking procedure establishes that Pinson initially was somewhat confused regarding the breath test designated by Cook and whether she wanted to submit to that test. Cook explained the breath test requirement

4

to Pinson several times and made it clear that an independent test would not be in lieu of the breath test he had designated. Pinson stated "Let's do blood." Thereafter, Cook advised that he was "marking that down as a refusal," and Pinson responded that she did not know what to do. Cook then stated: "We'll go get blood in a little while, but you realize it will be at your own expense." Pinson replied, "I don't care." No further discussion regarding either the breath or blood test is contained on the videotape. The booking procedure was completed and Pinson was placed in a cell. No further videotaping occurred.

As evidenced by the videotape, Pinson's request for a blood test was clearly stated and timely made. Moreover, Cook affirmatively told Pinson that they would get the requested test.

In addition, Pinson testified at the evidentiary hearing that she refused the breath test and requested the blood test, and that Cook said he would take her for the test. Cook's own testimony concedes the issue:

> Q. And do you recall that-- I mean she initially was very confused and didn't know what to do; right?
>
> A. Yes, sir.
>
> Q. But then she said exactly, I quote, "Let's do blood," right?
>
> A. Yes, sir.
>
> Q. And your reply was, quote, "We will go get blood in a little while, but you realize it is at your own expense"?
>
> A. Yes, sir.
>
> Q. And she replied, "I don't care"?

A. Yes, sir.

Q. You said, "I will take you to get blood." YOU promised her you would take her to the hospital to give blood?

A. That is my job. That is part of the statute that I have to follow, yes, sir.

.

Q. So my question is, at that point there was a request to get blood, and you had agreed to it; right?

A. Yes, sir.

. . . .

Q. At that point she has requested, and you have consented to her request for a blood test; have you not?

A. Yes, sir.

On this record, the City's characterization of the videotape as evidencing something less than a request by Pinson for the blood test is specifically belied by the videotape itself and by Cook's testimony. Further, the City's effort to recharacterize Pinson's clear and timely request--by relying on certain responses she provided at the evidentiary hearing some four months after the videotape was made--is inappropriate. As we recently stated in a different context, the government "may not 'undo' clear notice provided at a specific point in time by relying on testimony given three months later." See Magone v. Froehlich (Mont. 1995), P.2d ___, ___, 52 St.Rep. 240, 243.

Nor, given this record, is the City's reliance on the facts of Klinkhammer well placed. There, the videotape evidenced the defendant requesting that a physician of his choice administer a

6

test; the defendant did not appear to be requesting an independent test. Klinkhammer, 846 P.2d at 1009. Moreover, once the defendant understood that he was not entitled to his physician of choice to administer the officer-designated test, he consented to the offered test and did not request an independent test. Klinkhammer, 846 P.2d at 1010. Here, the videotape and the testimony indicated that Pinson requested the blood test and Cook agreed that it would be done. The officer-designated test was refused.

On the basis of the record before us, we conclude that the District Court's implicit finding that Pinson did not timely request an independent blood test is not supported by substantial credible evidence and is clearly erroneous.

Finally, we observe that Pinson and the City offered conflicting testimony to the District Court regarding a conversation between Pinson and Cook which occurred at Pinson's cell after the videotaping had ceased. Generally, Pinson's version--confirmed by her friend Ryan--was that she re-requested the independent blood test at that time and Cook refused the request. In Cook's version, premised on the lack of a previous timely request for the independent blood test, Pinson remained indecisive about the independent test during the later conversation, even when urged by Ryan to get the test; only after that did Cook break off further discussion of the blood test.

The parties reargue the conflicting testimony about the subsequent conversation here. Given our conclusion that Pinson clearly and timely requested an independent blood test during the

videotaped booking procedure and the City's sole reliance on the lack of such a request at that time, we need not address the conflicting versions of the later conversation.

We hold that, on the basis of the record before us in this case, the City's failure to comply with Pinson's request for an independent blood test violated her due process right to attempt to obtain exculpatory evidence. On that basis, we further hold that the District Court erred in denying Pinson's motion to dismiss.

Reversed and remanded with instructions to the District Court to vacate its Order of Judgment and Sentence and enter an order dismissing the charge.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices