No. 98-075

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 12N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

HARVEY CALDWELL,

Defendant and Appellant.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Powell,

Honorable Ted L. Mizner, Judge Presiding.

COUNSEL OF RECORD:

For Appellant:

Patrick T. Gallagher, Skakles & Gallagher, Anaconda, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Pamela P. Collins,

Assistant Attorney General, Helena, Montana

Chris Miller, Powell County Attorney, Deer Lodge, Montana

Submitted on Briefs: January 7, 1999

Decided: January 26, 1999

Filed:

No

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. In proceedings on appeal from the Powell County Justice Court to the Third Judicial District Court, Powell County, Harvey Caldwell moved to dismiss a charge against him of driving under the influence of alcohol (DUI), third offense, arguing that the arresting officer did not have a particularized suspicion justifying an investigatory stop and that the officer illegally obstructed his right to obtain an independent blood test. Caldwell's motion to dismiss was denied, he appealed to this Court, and we ruled that the appeal was not premature. State v. Caldwell, 1998 MT 261, 968 P.2d 711, 55 St.Rep. 1076. We now affirm the decision of the District Court.**

**¶3. In arguing that the arresting officer did not have a particularized suspicion justifying the stop of his vehicle, Caldwell points out that the officer testified that Caldwell was not swerving, weaving, or crossing the center line of the highway while he was driving. Caldwell also contends that the court's finding that he was driving too fast is clearly erroneous because, on cross examination, the officer indicated that he was not close enough to observe Caldwell's vehicle swerve or weave. Caldwell says that if the officer was not close enough to observe whether Caldwell was swerving or weaving, the officer was not close enough to observe whether Caldwell was driving too fast.**

¶4. Whether particularized suspicion exists is a question of fact depending on the totality of the circumstances. *State v. Reynolds* (1995), 272 Mont. 46, 50, 899 P.2d 540, 542-43. In this case, the officer had received the report of a citizen informant that Caldwell was drunk and was driving a vehicle matching the description of Caldwell's vehicle in the direction and in the area in which the officer spotted him. The officer observed Caldwell's license plate number and was told by his dispatcher that the plates were expired. Further, after the officer made a U-turn and began following Caldwell's vehicle, Caldwell stopped in the traffic lane for ten to fifteen seconds, then started up again and made a quick left turn at the first cut-off road. Then Caldwell accelerated heavily as he rounded a curve. The officer testified that he knew Caldwell was driving too fast because he had to attain a similar speed to keep up with Caldwell. We hold that the District Court did not err in finding that the officer had a particularized suspicion justifying an investigatory stop.

¶5. Caldwell's argument that the officer obstructed his right to obtain an independent blood test is based on his contention that he requested such a test only twenty to thirty minutes after he was read the implied consent law. The District Court found that Caldwell's request for a blood test was made approximately forty-five minutes after he was booked and put in a cell.

¶6. The accused must timely assert his right to a blood test. *City of Whitefish v. Pinson* (1995), 271 Mont. 170, 172, 895 P.2d 610, 612. The arresting officer testified that Caldwell originally declined the opportunity for an independent blood test, but after forty-five minutes to an hour changed his mind and asked to have one. Caldwell himself admitted that it may have been up to an hour after he was booked that he requested a blood test. It was the prerogative of the court, as the trier of fact, to resolve this conflict in the evidence as to how much time passed before Caldwell asked for an independent blood test. *See State v. Sattler,* 1998 MT 57, ¶ 55, 956 P.2d 54, ¶ 55, 55 St.Rep. 230, ¶ 55.

¶7. The record demonstrates no impediments to Caldwell's assertion of his right to have an independent blood test prior to the time he finally requested one. We hold that because Caldwell did not make his request when, or even shortly after, he was advised of his right to obtain an independent blood test, his request was not timely and was properly denied.

¶8. We affirm the decision of the District Court.

No

/S/ J. A. TURNAGE

We concur:

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART