No. 98-087

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 229

296 Mont. 101

987 P.2d 1142

THE STATE OF MONTANA,

Plaintiff and Respondent,

v.

CHRISTOPHER M. WATERS,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Rosebud,

The Honorable Joe L. Hegel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Joseph P. Mazurek, Attorney General, John Paulson, Assistant Attorney General, Helena, Montana; Lee R. Kerr, Rosebud County Attorney, Forsyth, Montana

_____

Submitted on Briefs: February 11, 1999

Decided: September 28, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

1. ¶Christopher M. Waters (Waters) appeals from the Sentencing Order of the Sixteenth Judicial District Court, Rosebud County. We reverse and remand.

Issues Presented

1. ¶There are two issues on appeal:

2. ¶(1.) Does the new judicial rule that oral pronouncement of sentence is the legally effective judgment apply retroactively to Waters' appeal?

3. ¶(2.) Do the extra conditions imposed in the written Sentencing Order conflict with the oral pronouncement of sentence?

Factual and Procedural Background

1. ¶Waters and his common law wife, April King, moved from Texas to Forsyth, Montana, in 1997. The State of Montana (the State) charged Waters by Information, on August 11, 1997, with the offense of Issuing a Bad Check as Part of a Common Scheme, a felony, in violation of § 45-6-316, MCA. The Information alleged that, during July of 1997, Waters had knowingly written eight bad checks to various businesses in Rosebud County for a total of $1,848.02. The State similarly charged co-defendant, April King, with the felony offense of issuing bad checks as part of a common scheme.

2. ¶Waters pleaded not guilty to the charge at his initial appearance and arraignment on August 18, 1997. Thereafter, on September 21, 1997, Waters and the State entered into a written Acknowledgment and Waiver of Rights and Plea Agreement (Plea Agreement). Pursuant to the Plea Agreement, Waters agreed to plead guilty in exchange for the State agreeing to recommend a five-year suspended sentence. Waters understood that the District Court was not bound by the terms of the

agreement.

3. ¶The District Court accepted Waters' change of plea at a hearing on September 22, 1997. After the District Court accepted Waters' guilty plea as voluntary, it ordered the preparation of a pre-sentence investigation (PSI). The PSI was completed and filed with the court on October 8, 1997. The PSI recommended that Waters be sentenced to the Montana Department of Corrections (DOC), but did not make a specific recommendation for any length of incarceration. On October 20, 1997, an Addendum to the PSI was filed.

4. ¶On October 22, 1997, a sentencing hearing was held. The pre-sentence investigator testified that the Addendum to the PSI had been filed because he had subsequently learned that Waters had two outstanding misdemeanor warrants and one outstanding felony warrant for his arrest in Texas. Based on these outstanding warrants, which included similar charges to those at issue here, the investigator recommended that Waters be sentenced to the Montana State Prison for five years with two years suspended. At the close of the hearing, the District Court informed Waters that it was not going to follow the State's recommendation in the Plea Agreement, and asked Waters if he wished to withdraw his guilty plea or continue with sentencing. Waters agreed to continue with his plea of guilty and let the court sentence him.

5. ¶Thus, the District Court orally sentenced Waters to the DOC for five years with two years suspended. The court orally imposed the following conditions on Waters' sentence:

Well, what the Court is going to do, I'm going to commit [Waters] to the [DOC] for a period of five years with two suspended under the conditions in the Plea Agreement and the [PSI], including the restitution, and including joint and several liability for the other checks that [April King] wrote.

Apparently, the District Court believed that a DOC commitment would possibly enable Waters to get transferred to Texas authorities and clear up his outstanding warrants. The court referred to "conditions" contained in the Plea Agreement and PSI, but did not elaborate on those conditions. The court did not orally impose any other conditions.

1. ¶The District Court signed its written Sentencing Order on November 3, 1997, which accurately reflected the five-year commitment with two years suspended, as orally pronounced by the court. The Sentencing Order set forth ten conditions and eight sub-conditions applicable to Waters' sentence as follows:

1. The Defendant shall be placed under the supervision of the Montana Department of Corrections and Human Services, Adult Parole and Probation Division, and be subject to their standard rules and regulations as listed below.

a. Residence: The Defendant shall not change his place of residence without first obtaining permission from his Probation/Parole Officer;

b. Travel: The Defendant shall not leave his assigned district without first obtaining written permission from his Probation/Parole Officer;

c. Employment: The Defendant shall maintain employment or a program approved by his Probation/Parole Officer, and must obtain permission from his Probation/Parole Officer prior to any change of employment;

d. Reporting: The Defendant is required to personally report to his Probation/Parole Officer as directed, and to submit written monthly reports on forms provided;

e. Weapons: The Defendant shall not own, possess or be in control of any firearms or deadly weapons, including black powder, as defined by state or federal law;

f. Financial: The Defendant must obtain permission from his Probation/Parole officer before financing a vehicle, purchasing property, or engaging in business;

g. Search: Upon reasonable cause, the Defendant shall, while on parole or probation, submit to a search of his person, vehicle or residence by his Probation/Parole Officer, at any time, without a warrant;

h. Laws & Conduct: The Defendant shall comply with all city, county, state, and federal laws and ordinances and conduct himself as a good citizen. The Defendant shall report any arrests or contacts with law enforcement to his Probation/Parole Officer within 72 hours.

2. The Defendant shall not use or possess alcoholic beverages nor enter any establishment where alcohol is the chief item of sale;

3. The Defendant shall not use or possess illegal drugs;

4. The Defendant shall submit to testing of his blood, breath, and/or other bodily fluids to

determine the presence of alcohol and/or illicit drugs upon the request of his supervising officer;

5. The Defendant shall not open or have in his control or possess a checking account and he shall not be a signatory on any other checking account;

6. The Defendant shall be subject to supervision fees in the amount of $10.00 per month, to be paid at the rate of $30.00 per quarter, or $120.00 per year, under the direction of his supervising officer;

7. The Defendant shall pay a surcharge in the amount of $20.00 to the Clerk of the District Court for the felony conviction, pursuant to Section 46-18-236 M.C.A.;

8. The Defendant shall reimburse Rosebud County for the costs of his Court-appointed counsel, in the amount of $250.00;

9. The Defendant shall reimburse the victims of his offense in the amount of $1,848.02, payable through the office of Adult Probation and Parole, and that said restitution be paid in full within six (6) months of the date of discharge of this sentence. Additionally, the Defendant will be jointly and severally responsible for the $4,645.05 in restitution established in Rosebud County Cause No. DC 97-39, with co-defendant, April Jean King, a/k/a/ April Jean Waters.

10. The Defendant shall present himself to the proper authorities in the State of Texas, to answer to the outstanding arrest warrants issued in that jurisdiction.

1. ¶All of the foregoing conditions, with the exception of two, were contained in either the PSI, the Plea Agreement, or both documents. The two conditions in the written judgment that were not contained in either one or both of the incorporated documents were: (1) payment of supervision fees (condition 6); and (2) submission to Texas authorities (condition 10). Waters did not file a contemporaneous objection to the variations between the oral pronouncement of sentence and the written judgment.

2. ¶On December 9, 1997, Waters filed a *pro se* notice of appeal. Subsequently, this Court appointed the Montana Appellate Defender Office to represent Waters on appeal. On May 1, 1998, Assistant Appellate Defender, Chad Wright, submitted a

motion and brief to this Court requesting that he be allowed to withdraw from Waters' appeal because there were no meritorious issues to be raised. On August 13, 1998, this Court denied the motion to withdraw, and ordered appellate counsel to submit a brief on appeal addressing, at a minimum, the question of the validity of the District Court's written Sentencing Order in light of our recent decision in State v. Lane, 1998 MT 76, 288 Mont. 286, 957 P.2d 9.

## Discussion

1. ¶In <u>Lane</u>, we sought to resolve a conflict between this Court's past approach to the finality of a sentence, which viewed the written judgment as the legally effective sentence, and contrary authority suggesting that the oral pronouncement of sentence controls for purposes of finality. After reviewing Montana statutes requiring the defendant's presence at the oral pronouncement of sentence, the constitutional protections affording a criminal defendant the right to be present and the opportunity to respond to a trial court sentence, and federal case law indicating that the oral pronouncement of sentence is the legal sentence, this Court announced the rule "that the sentence orally pronounced from the bench in the presence of the defendant is the legally effective sentence and valid, final judgment." <u>Lane</u>, ¶¶ 40-41, <u>overruling</u> State v. Graveley (1996), 275 Mont. 519, 915 P.2d 184; State v. Mason (1992), 253 Mont. 419, 833 P.2d 1058; State v. Wirtala (1988), 231 Mont. 264, 752 P.2d 177; State v. Enfinger (1986), 222 Mont. 438, 722 P.2d 1170; and any other Montana case law inconsistent with the new rule. "Accordingly, the written judgment and commitment will serve as evidence of the sentence orally pronounced." <u>Lane</u>, ¶ 40.

2. ¶Waters' challenge to the District Court's Sentencing Order involves a question of law. We review questions of law *de novo*. State v. Romero (1996), 279 Mont. 58, 68, 926 P.2d 717, 723.

3. ¶(1.) Does the new judicial rule that oral pronouncement of sentence is the legally effective judgment apply retroactively to Waters' appeal?

4. ¶In <u>Lane</u>, after announcing the new judicial rule that oral pronouncement of sentence controls, this Court applied that rule to the case and held, without discussing whether the new rule was retroactive in application, that the defendant's oral sentence was the legal and valid sentence. <u>See</u> <u>Lane</u>, ¶¶ 48-49. The parties in this case agree, and we concur, that the new rule announced in <u>Lane</u> has retroactive application under recent pronouncements by this Court. However, there are some inconsistencies in our case law which we shall seek to clear up in this case. We limit

our discussion to retroactivity for purposes of direct review in criminal cases.

5. ¶In State v. Redding (1984), 208 Mont. 24, 675 P.2d 974, this Court imposed a new rule of law, but applied that rule retrospectively. In so doing, we noted that "[t]he major factor in limiting retroactive application of new principles of law is whether such application would further or retard the purpose and effect of the rule." Redding, 208 Mont. at 30, 675 P.2d at 977 (citing, in part, Linkletter v. Walker (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (setting forth a three-pronged test for determining retroactive application of new constitutional rules of criminal procedure), overruled by Griffith v. Kentucky (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649).

6. ¶A few years later, in State, City of Bozeman v. Peterson (1987), 227 Mont. 418, 739 P.2d 958, we stated the general rule that "judicial decisions will apply retroactively." Peterson, 227 Mont. at 420, 739 P.2d at 960. However, we cited a civil decision for a number of factors to be considered by courts in determining whether a new judicial rule should be applied retroactively or prospectively. See Peterson, 227 Mont. at 420, 739 P.2d at 960 (citing LaRoque v. State (1978), 178 Mont. 315, 319, 583 P.2d 1059, 1061). In short, the Peterson Court did not distinguish between retroactivity in civil and criminal cases and enumerated a variety of factors to be considered in analyzing retroactivity in criminal cases.

7. ¶In 1995, this Court had occasion to rethink retroactivity analysis for criminal cases in State v. Egelhoff (1995), 272 Mont. 114, 900 P.2d 260, rev'd on other grounds, Montana v. Egelhoff (1996), 518 U.S. 37, 116 S.Ct. 2013, 135 L.Ed.2d 361. In Egelhoff, we reformed Montana's retroactivity analysis in criminal cases to comport with the decision of the United States Supreme Court in Griffith v. Kentucky (1987), 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649. The U.S. Supreme Court, in Griffith, sought to clarify the standards for determining retroactivity for new constitutional rules of criminal procedure, and concluded that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." Griffith, 479 U.S. at 328, 107 S.Ct. at 716, 93 L.Ed.2d at 661 (departing from the "clear break exception" articulated in United States v. Johnson (1982), 457 U.S. 537, 102 S.Ct. 2579, 73 L. Ed.2d 202).

8. ¶In Egelhoff, this Court, noting that the Griffith precedent was "binding" authority, reasoned that it was necessary to reform Montana's retroactivity analysis for new rules of criminal procedure because "[t]he United States Supreme Court ha[d] refined its position since we decided Peterson . . . ." Egelhoff, 272 Mont. at 125, 900

P.2d at 267. Thus, we adopted the above quoted <u>Griffith</u> rule as Montana law in <u>Egelhoff</u>. Since " 'evenhanded justice' " dictates that a new judicial rule be " 'applied retroactively to all who are similarly situated,' " we held that a decision announcing a new rule of criminal procedure is applicable to all cases still subject to direct review and not yet final as of the date of the decision. <u>Egelhoff</u>, 272 Mont. at 125-26, 900 P.2d at 267 (quoting Teague v. Lane (1989), 489 U.S. 288, 300-01, 109 S. Ct. 1060, 1070, 103 L.Ed.2d 334, 349). Thus, the <u>Egelhoff</u> Court, without expressly overruling <u>Peterson</u> or other Montana precedent for determining retroactivity on direct review of criminal cases, clearly shifted the analysis away from a multi-factored inquiry and towards a bright-line rule. Today, we overrule <u>Redding</u>, <u>Peterson</u>, and any other decision of this Court which imposes an inquiry, multi-factored or otherwise, into whether a new judicial rule of criminal procedure is to be applied retroactively or prospectively to a similarly situated criminal defendant whose case is pending on direct review or not yet final.

9. ¶Retroactivity is a threshold matter which, as this Court has recently emphasized, compels the evenhanded application of a "new rule for the conduct of criminal prosecutions" to all similarly situated cases that are pending on direct review or not yet final. State v. Nichols, 1999 MT 212, ¶ 10, ___ P.2d ___, ¶ 10, ___ St.Rep. ___, ¶ 10 (citing <u>Egelhoff</u>, 272 Mont. at 125-26, 900 P.2d at 266-67). Therefore, all defendants whose cases are pending on direct review or not yet final are entitled to the retroactive application of a new judicial rule of criminal procedure. <u>See</u> <u>Egelhoff</u>, 272 Mont. at 125, 900 P.2d at 267 (quoting <u>Griffith</u>, 479 U.S. at 328, 107 S.Ct. at 716, 93 L.Ed.2d at 661); <u>accord</u> State v. Steinmetz, 1998 MT 114, ¶ 10, 288 Mont. 527, ¶ 10, 961 P.2d 95, ¶ 10 (giving retroactive effect to a decision which was handed down after the appeal in question "was submitted on briefs" but before a final appellate decision was rendered); State v. Thibert, 1998 MT 207, ¶ 13, 290 Mont. 408, ¶ 13, 965 P.2d 251, ¶ 13 (giving retroactive effect to two decisions handed down after the trial court had ruled but prior to a final appellate decision); <u>see also</u> United States v. Keys (9th Cir. 1998), 133 F.3d 1282, 1286 (relying on <u>Griffith</u> to hold that the defendant was entitled to retroactive application of a new constitutional rule "because it was announced after his trial and before his case had become final"). The <u>Egelhoff</u> standard applies irrespective of whether the new judicial rule constitutes a " 'clear break' " from existing precedent, <u>see</u> <u>Griffith</u>, 479 U.S. at 324-28, 107 S.Ct. at 714-16, 93 L.Ed.2d at 659-61, and without regard to whether the new judicial rule was "available to the District Court at the time it ruled . . . ." <u>Steinmetz</u>, ¶ 10.

10. ¶The <u>Lane</u> decision, by holding that the oral pronouncement of sentence controls

over the written sentence for purposes of finality, plainly imposed a new judicial rule of criminal procedure. Indeed, <u>Lane</u> expressly overruled inconsistent precedent in announcing the new rule. Thus, we hold that <u>Lane</u> established a new judicial rule, for purposes of direct review, regardless of the fact that <u>Lane</u> was a clear break from existing precedent. Furthermore, we hold that <u>Lane</u> applies retroactively to Waters' appeal, even though the new rule was not available to the District Court at the time of sentencing.

1. ¶(2.) Do the extra conditions imposed in the written Sentencing Order conflict with the oral pronouncement of sentence?

1. ¶Before reaching the merits of Waters' sentencing claim, we must address the threshold, procedural question of whether Waters' failure to object to the inconsistency between the District Court's oral pronouncement of sentence and its written Sentencing Order constitutes a waiver of that claim on appeal. This Court generally does not review a sentencing issue which was not preserved for appeal in the court below. Sections 46-20-104(2) and 46-20-701(2), MCA; <u>see also</u> State v. Arlington (1994), 265 Mont. 127, 151-52, 875 P.2d 307, 321-22 (citing §§ 46-20-104 and 46-20-701, MCA). However, we have noted that an "exception to this general rule" arises where the defendant alleges that the "sentence is <u>illegal or exceeds statutory mandates</u>, even if no objection is made at the time of the sentencing." State v. Nelson (1995), 274 Mont. 11, 18, 906 P.2d 663, 667 (citing State v. Hatfield (1993), 256 Mont. 340, 846 P.2d 1025; State v. Lenihan (1979), 184 Mont. 338, 602 P.2d 997).

2. ¶As the State concedes, this case falls within the foregoing exception. Waters argues that certain portions of the written judgment conflict with the oral pronouncement of sentence and, thus, that the conflicting portions of the written sentence are "invalid." Waters alleges in essence that the extra sentencing conditions contained in the written judgment are illegal under the authority of <u>Lane</u>. For that reason, his claim comes within the exception discussed in <u>Nelson</u>. We hold that Waters' sentencing claim is not procedurally barred by §§ 46-20-104 and 46-20-701, MCA, and is therefore reviewable by this Court.

3. ¶The State acknowledges that the oral pronouncement of Waters' sentence is the legally valid final judgment pursuant to the new rule of <u>Lane</u>, which is applicable on direct review here. Under <u>Lane</u>, the written sentence is "mere evidence" of the oral sentence. <u>See</u> <u>Lane</u>, ¶¶ 35-40. Thus, "in the event of a conflict between the oral

pronouncement of sentence and the written judgment and commitment, the oral pronouncement controls." <u>Lane</u>, ¶ 48. The "conflict" at issue in <u>Lane</u> was direct: the sentence, as orally pronounced, had <u>ordered</u> that the defendant would not be paroled until he had completed the prison's sex offender treatment program; however, the district court, in its written judgment, only <u>recommended</u> that the defendant not be eligible for parole until he completed the sex offender program. <u>See Lane</u>, ¶¶ 7, 9. Hence, we held that the district court's entry of a *nunc pro tunc* order to correct the conflict, arising from a "clerical error," was within the district court's authority pursuant to § 46-18-117, MCA. <u>Lane</u>, ¶ 49.

4. ¶The alleged "conflict" in this case is the inclusion of conditions in the District Court's written judgment that were not expressly enumerated at the oral pronouncement of sentence. While we did not distinguish between the types of conflict which would trigger application of the <u>Lane</u> rule, we agree with the State that the holding of <u>Lane</u> "logically extends to omitted provisions as well as to conflicting provisions," since that holding was premised upon the defendant's constitutional and statutory rights to be present at the time of sentencing. <u>See Lane</u>, ¶ 40 (adopting the new rule as "more consistent with Montana's constitutional and statutory provisions that allow for a defendant to be present at sentencing and be afforded an opportunity to respond . . . "). Therefore, " 'a defendant is sentenced *in absentia* when the judgment and commitment order is allowed to control when there is a conflict.' " <u>Lane</u>, ¶ 38 (quoting United States v. Villano (10th Cir. 1987), 816 F.2d 1448, 1452-53).

5. ¶As mentioned previously, the District Court orally imposed only the following conditions on Waters' sentence: (1) a term of five years with two years suspended; (2) restitution; and (3) joint and several liability for his co-defendant's issuance of bad checks. However, there are numerous sentencing conditions in the District Court's Sentencing Order borrowed from either or both the PSI and Plea Agreement which were omitted from the oral pronouncement of sentence, as well as two extra conditions in the written Sentencing Order which were neither contained in the PSI or Plea Agreement nor imposed orally by the court. Regarding the conditions of parole contained in either or both the PSI and Plea Agreement, the State suggests that since the District Court's oral pronouncement of sentence expressly "incorporated by reference" the Plea Agreement and PSI and since those documents contained the parole conditions imposed by the court in its written judgment, this Court should find no "conflict" under <u>Lane</u>.

6. ¶We are troubled by the implications of the State's contention that "[w]here, as here, the document is part of the record and is known to the defendant, there is no

ambiguity in the oral pronouncement of the sentence, and the defendant has not been sentenced *in absentia*." As Waters asserts, the State's position would "effectively gut" the holding of Lane. The State would have this Court hold that a trial court is not required under Lane to "read aloud each parole or probation condition" at the oral pronouncement of sentence so long as the court expressly referred to an "incorporated document" containing the condition or conditions. Under this interpretation of Lane, a district court could simply pronounce that a defendant would be sentenced according to conditions contained in an outside document without putting the defendant on notice as to which particular sentencing conditions were being imposed, thereby denying the defendant his or her constitutional and statutory rights to be present at the time of sentencing and to respond to the court's sentence. This would clearly result in a defendant being sentenced *in absentia*.

7. ¶As we noted in Lane, the oral pronouncement of sentence controls "even if contrary to the trial judge's intent." Lane, ¶ 36 (citing United States v. Munoz-Dela Rosa (9th Cir. 1974), 495 F.2d 253, 256). Therefore, " '[i]t is <u>incumbent upon a sentencing judge to choose his [or her] words carefully so that the defendant is aware of his [or her] sentence when he [or she] leaves the courtroom</u>.' " Lane, ¶ 38 (quoting Villano, 816 F.2d at 1452-53) (emphasis added).

8. ¶We cannot agree, however, with Waters' contention, pursuant to Lane, that the District Court's oral pronouncement of a term of years, restitution, and joint and several liability are the only sentencing conditions which can be lawfully imposed upon him. According to Waters, he should be excused from his two-year suspended sentence since the court failed to orally enumerate his specific parole conditions, and he should also be excused from having to pay restitution within six months of the discharge of sentence since the court failed to orally mention any specific conditions for the payment of restitution. Being mindful of the need to apply Lane in a principled manner and yet reach a reasonable result in this appeal, we determine that the District Court's oral pronouncement of sentence was ambiguous. Under Lane, a written judgment may "help clarify an ambiguous oral sentence by providing evidence of what was stated at sentencing." Lane, ¶ 37 (citing Villano, 816 F.2d at 1452). Consequently, we hold that the written enumeration of the specific parole conditions and the amount and terms of paying restitution in the District Court's Sentencing Order were merely clarifications of ambiguous sentencing conditions imposed orally.

9. ¶Regarding the ambiguous conditions, the District Court orally pronounced that Waters would receive a suspended sentence and be liable for restitution, but failed

to elaborate on the specific parole conditions to which he would be subject or the terms and conditions for paying restitution. Nevertheless, we note that during the course of the sentencing hearing, Waters acknowledged that he had "read and discussed" the PSI and the Addendum to the PSI, and further testified that he would be "happy to follow" any of the conditions of probation or parole set forth in the Plea Agreement. At the oral pronouncement of sentence, the District Court clearly put Waters on notice that he was receiving a suspended sentence subject to the parole conditions listed in the PSI and Plea Agreement and that he was liable for restitution under the sentence. There is no indication that, when the District Court orally pronounced sentence, Waters was denied an opportunity to respond to the sentence at that time and ask for clarification. While it would be far preferable, under the authority of Lane, for a sentencing judge to elaborate the specific conditions and sub-conditions at the oral pronouncement of sentence, where, as here, a defendant was clearly put on notice of sentencing conditions and given a sufficient opportunity to respond to those conditions and ask for clarification, that defendant should not be heard to complain.

10. ¶As noted before, there were two extra conditions in the District Court's Sentencing Order which were not contained in either or both the PSI and Plea Agreement: (1) payment of supervision fees; and (2) submission to Texas authorities. Regarding the payment of supervision fees, the State argues that even though that condition was not included in the oral pronouncement of sentence, the collection of probation and parole supervision fees by the clerk of court is statutorily mandated and would be imposed on a defendant regardless of whether a court ordered that condition. We cannot agree with the State's absolutist argument. The statute in question provides that a district court "may reduce or waive the fee or suspend the monthly payment of the fee if it determines that the payment would cause the probationer or parolee a significant financial hardship." Section 46-23-1031(1)(b), MCA. There is no evidence that Waters was put on notice by the District Court's oral pronouncement of sentence that he would be required to pay supervision fees, nor offered an opportunity to respond to that condition and request that the court reduce or waive those fees on account of financial hardship. Thus, that condition must be stricken from the written sentence unless the District Court determines on remand that payment of supervision fees would not impose a "significant financial hardship" on Waters.

11. ¶Regarding submission to Texas authorities, that sentencing condition was contained in neither the PSI nor Plea Agreement and was never mentioned by the District Court at the oral pronouncement of sentence. We hold that this condition

falls squarely within the rule of "conflict" announced in <u>Lane</u> and, therefore, that Waters was effectively sentenced *in absentia* as to that condition. Hence, the oral pronouncement of sentence controls and that condition must be stricken from Waters' written sentence.

12. ¶We remand this case for entry of a *nunc pro tunc* order amending the written sentence pursuant to § 46-18-117, MCA, to conform with this opinion.

13. ¶Reversed and remanded.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART