JUSTICE NELSON
dissents.
¶36 I dissent from the Court’s analysis and resolution of Issue One and therefore would not address Issue Two.
¶37 The dialogue between Wrzesinski and Officer Herbst is set forth at ¶ 7 of the Court’s Opinion. As the record reflects, the dialogue is as follows:
Wrzesinski: So why wouldn’t you ask me to take a blood test then?
Officer Herbst: Because we take a breath test is what we do.
Wrzesinski: I want a blood test though.
Officer Herbst: Hold on a second, okay? I’ll explain that to you right now.
¶38 From this dialogue and Wrzesinski’s clear and unequivocal statement: “I want a blood test though,” the Court concludes at ¶ 19 that ‘Wrzesinski made no requests for an additional or independent test.” Conceding that the District Court did not make any particular finding in this regard, the Court then goes on to infer that Wrzesinski did not want an independent blood test, but rather, was requesting an alternative to the breath test that Officer Herbst had selected. The Court states that it is “hard pressed to construe Wrzesinski’s statements as a request for an independent blood test.” The Court’s construction of Wrzesinski’s statements not only ignores the clear and unambiguous language which Wrzesinski used: “I want a blood test though,” but also ignores our case law which is on point.
¶39 First, if it is necessary to construe Wrzesinski’s language at all, it must be construed in precisely the opposite fashion as does the Court. A review of the videotape of the booking process at the jail indicates that when Officer Herbst requested that Wrzesinski take a breath test, *170 Wrzesinski firmly responded: “I want a blood test though,” (emphasis supplied). Clearly from the language which he used and the tone of his voice, Wrzesinski was not suggesting an alternative to the breath test, but he was informing Officer Herbst that he, additionally, wanted an independent blood test. “Though” means “however” or “nevertheless.” Merriam-Webster’s Collegiate Dictionary 1228 (10th ed., Merriam-Webster 1997). Wrzesinski wanted a blood test “nevertheless.”
¶40 Second, we faced this same situation in City of Whitefish v. Pinson, 271 Mont. 170, 895 P.2d 610 (1995). Pinson appealed from her conviction of violating § 61-8-401, MCA. We reversed, holding that the District Court erred in denying Pinson’s motion to dismiss the charge. The specific issue which we addressed was whether Pinson’s due process rights were violated by the failure of the City of Whitefish (the City) to comply with a request for an independent blood test. Pinson, 271 Mont. at 171, 895 P.2d at 611.
¶41 Pinson alleged that she had requested an independent blood test during the booking procedure. The City stated that Pinson had not made a timely request for a blood test and the District Court agreed, denying Pinson’s motion to dismiss pursuant to State v. Peterson, 227 Mont. 418, 739 P.2d 958 (1987) and State v. Klinkhammer, 256 Mont. 275, 846 P.2d 1008 (1993). Pinson, 271 Mont. at 172, 895 P.2d at 612-13. Examining the record, we noted that, not unlike Wrzesinski in the case at bar, Pinson was initially somewhat confused during the booking procedure regarding the breath test designated by the officer and whether she wanted to submit to that test. The officer explained to Pinson several times the breath test requirements and made it clear that an independent test would not be in lieu of the breath test he had designated. Pinson stated “Let’s do blood.” Thereafter the officer advised that he was “marking that down as a refusal,” and Pinson responded that she did not know what to do. The officer then stated: “We’ll go get blood in a little while, but you realize it will be at your own expense.” Pinson replied, “I don’t care.” No further discussion regarding either the breath test or the blood test was available and the booking procedure was completed and Pinson was placed in a cell. Pinson, 271 Mont. at 173, 895 P.2d at 612.
¶42 Based upon this dialogue, which is not markedly different than the dialog between Wrzesinski and Officer Herbst, we concluded that Pinson’s request for a blood test was clearly stated and timely made. We also concluded that the officer affirmatively told Pinson that they would get the requested blood test. Pinson, 271 Mont. 15 173, 895 P.2d at 612.
*171 ¶43 On this record, we concluded that the City’s characterization of Pinson’s clear and timely request was inappropriate. Moreover, we concluded that the District Court’s implicit finding that Pinson did not timely request an independent blood test was not supported by substantial credible evidence and was clearly erroneous. Pinson, 271 Mont. at 174, 895 P.2d at 613.
¶44 The only real difference between the dialogue in Pinson and in the instant case is that in the former, the officer stated that he would assist Pinson in obtaining the independent test, whereas Officer Herbst did not do so in the present case. That difference notwithstanding, each defendant’s timely and unequivocal request for an independent test was substantially the same: Pinson stated, “Let’s do blood,” Pinson, 271 Mont at 173, 895 P.2d at 612; Wrzesinski stated, “I want a blood test though.”
¶45 Moreover, even in the case at bar, the trial court speculated that “[t]he officer may have simply forgotten to ask [Wrzesinski], or he might have believed that [Wrzesinski] simply changed his mind after being reminded [as was Pinson] that the blood test would be at his own expense.”
¶46 I would rule consistently with Pinson and hold that Wrzesinski timely and unequivocally requested an independent blood test. Because Wrzesinski was precluded from obtaining the independent blood test, I would, as did the Court in Pinson, reverse and remand with instructions to the District Court to dismiss the charge. Pinson, 271 Mont. at 175, 895 P.2d at 613.
¶47 I dissent.