FILED

04/02/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0659

DA 22-0659

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 73N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

MICHAEL PAINTER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2020-393
Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

David M. Maldonado, Maldonado Law, PLLC, Missoula, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

Kirsten H. Pabst, Missoula County Attorney, Mac Bloom, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs: February 21, 2024

Decided: April 2, 2024

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Michael Painter appeals a Fourth Judicial District Court conviction of Driving Under the Influence, Fourth or Subsequent Offense, § 61-8-401(1)(a), MCA (recodified at § 61-8-1008, MCA), arguing his motion to dismiss was improperly denied because law enforcement impeded him from obtaining an independent blood draw.

¶3 We affirm.

¶4 Painter was pulled over on July 28, 2020, after Missoula City Police Officer Jones observed him drive erratically between lanes and proceed through a red light. During the traffic stop, Jones observed a half-empty bottle of liquor in the car and noted that Painter had glossy eyes and slurred speech.

¶5 Officer Kooper Guay responded to the scene and performed a field sobriety test on Painter after being briefed by Jones. Painter failed the field sobriety test, and agreed to submit a preliminary breath test, which registered a blood alcohol content of 0.16. Guay placed Painter under arrest and loaded him into his patrol car. Officer John Weber was also in the vehicle, as he was providing Guay field training at the time. Guay then read

Painter an implied consent advisory, which included Painter's right to an independent blood draw.

¶6     While Guay was reading the implied consent advisory, the following exchange took place:

> OFFICER GUAY:  As the requesting officer, I have the right to select the type of test or tests you will be asked to take.  I am going to ask you to take a breath test.  Later I may ask you to take a blood test . . . [recited advisory from printed form] . . . After the requested testing is completed or refused, you may have a doctor or a nurse administer an independent blood test for alcohol or drugs at your expense.  If you refuse testing now, taking an independent test will not char—change the action taken on your driver's license—
>
> OFFICER WEBER (interrupting Officer Guay):  Stop.  We're asking for blood now.
>
> OFFICER GUAY (to Officer Weber):  We are asking for blood?
>
> OFFICER WEBER (to Officer Guay):  Because it's four.  So, earlier you said—
>
> OFFICER GUAY (interrupting Officer Weber):  Correct.
>
> OFFICER WEBER (to Officer Guay, instructing him on what to say):  —we may ask you to ask for blood, just say I—
>
> PAINTER (interrupting Officer Weber):  I want an independent test.
>
> OFFICER WEBER (to Officer Guay):  —want to ask to pay for a blood test at this point.
>
> PAINTER:  I want an independent test.
>
> OFFICER GUAY:  —So, I'm going to ask you for a blood test.
>
> OFFICER GUAY (to Officer Weber):  Do you want me to re-read it?
>
> OFFICER WEBER (to Officer Guay, instructing him on what to say):  Nope.  Will you, will you take a blood test?

3

OFFICER GUAY (to Painter):  Will you take a blood test for me?

OFFICER WEBER (to Officer Guay, instructing him on what to say):  Do you have any questions about what we read?

OFFICER GUAY (to Painter):  Or do you have any questions about what I read you?

PAINTER:  Oh, come on.  Let's just get this over with.

OFFICER GUAY:  Will you take one, Michael?

PAINTER:  Sure.

OFFICER GUAY:  A blood test?

PAINTER:  Yeah.

OFFICER GUAY:  Okay.

OFFICER WEBER:  What'd he say?

OFFICER GUAY:  Yes, he will.

OFFICER WEBER:  No questions about it?

OFFICER GUAY:  None.

¶7     Following the exchange, Painter was taken to St. Patrick's Hospital for the blood draw.  The independent blood draw was not discussed any further, and Painter made no additional requests to ensure that one was performed.

¶8     In his motion to dismiss, Painter argued that he was denied an independent blood draw due to the "affirmative actions" of Officers Guay and Weber.  At an evidentiary hearing on the motion, Officers Guay and Weber testified that they did not hear Painter's request for an independent blood draw because they were engaged in a conversation of

4

their own. On appeal, Painter argues the District Court erred in denying his motion to dismiss based on the same legal theory.

¶9      We review a district court's decision denying a motion to dismiss for correctness. *State v. Neva*, 2018 MT 81, ¶ 11, 391 Mont. 149, 415 P.3d 481.

¶10      The statute governing the administration of blood tests codifies the due process right to exculpatory evidence for DUIs, providing:

> In addition to any test administered at the direction of a peace officer, a person may request that an independent blood sample be drawn by a physician or registered nurse for the purpose of determining any measured amount or detected presence of alcohol . . . The peace officer may not unreasonably impede the person's right to obtain an independent blood test. The peace officer may but has no duty to transport the person to a medical facility or otherwise assist the person in obtaining the test.

Section 61-8-1019(2), MCA. To establish that his right to an independent blood draw was violated, a defendant must therefore show that he timely requested the independent test, and that the officer unreasonably impeded his right to obtain it. *State v. Minkoff*, 2002 MT 29, ¶ 10, 308 Mont. 248, 42 P.3d 223 (citation omitted).

¶11      Whether Painter requested an independent test is uncontested, thus our sole task is to determine whether or not the officers unreasonably impeded Painter's right to an independent blood draw.

¶12      Unless an officer makes promises otherwise, they are not required to do anything beyond provide an implied consent advisory informing the defendant about his right to one. *City of Whitefish v. Pinson*, 271 Mont. 170, 173-74, 895 P.2d 610, 612 (1995) (independent blood draw was impeded when officer promised to take the defendant to the hospital for one and failed to do so). While an officer has no duty to assist a defendant in obtaining the

5

test, "they cannot frustrate such an effort through either affirmative acts or their rules and regulations." *Minkoff*, ¶ 16 (quoting *State v. Swanson*, 222 Mont. 357, 361-62, 722 P.2d 1155, 1158 (1986)) (independent blood draw impeded when officer stated that it would show a higher blood alcohol concentration than a breath test).

¶13 After conceding that he was provided an informed consent advisory, Painter argues that the confusion in the exchange between Guay, Weber, and Painter amounted to affirmative acts—an "inattentiveness" or "willful disregard"—that impeded Painter from obtaining an independent blood draw. The State counters that Guay and Weber simply did not hear Painter's request and had no obligation to him other than what they had already provided, i.e., the informed consent advisory. We agree with the State.

¶14 Painter fails to identify a continuing obligation the officers were "inattentive" to or "willfully disregarded" if not an obligation to assist Painter, which the statute clearly proscribes. Section 61-8-1019(2), MCA. The officers made no promises that Painter would have relied on to his detriment. *Pinson*, 271 Mont. at 173-74. Moreover, the officers did not make statements that would have dissuaded Painter from obtaining an independent test. *Minkoff*, ¶ 16. Rather than inquire further about his rights or otherwise reassert them, Painter simply stated: "Oh come on, let's get this over with." Painter obtained the State's blood test at St. Patrick's Hospital and did not inquire any further about an independent blood draw at that time.

¶15 The District Court correctly ruled that Painter's due process right to an independent blood draw was not violated.

¶16    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR