IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 155

**OPINION AND ORDER**

00-086

STATE OF MONTANA,

Plaintiff and Appellant,

v

BRYAN GOEBEL,

Defendant and Respondent

_____

00-113

STATE OF MONTANA,

Plaintiff and Respondent,

v

JOSHUA DAVID GIDDINGS,

Defendant and Appellant.

¶1 On April 26, 2001, we issued opinions in the above entitled cases wherein we held that a probable cause hearing pursuant to § 46-23-1012(4), MCA (1999), is mandatory only when an offender has been arrested pursuant to a warrant issued by a judge.

¶2 On May 4, 2001, Bryan Goebel (Goebel) filed a petition for rehearing in *State v. Goebel*, Cause No. 00-086, asking this Court to look beyond the plain language of § 46-23-1012, MCA, and hold that the probable cause hearing designated in subsection (4) of that

statute is mandatory only when an offender has been arrested by a probation officer rather than pursuant to a warrant issued by a judge.

¶3 Next, on May 7, 2001, the State filed a petition for rehearing in *State v. Giddings*, Cause No. 00-113, seeking clarification of whether the Court's decision in that case applies retroactively or was intended for prospective application only. In its petition, the State points out that the 2001 Legislature amended § 46-23-1012, MCA, to delete the requirement for the probable cause hearing designated in subsection (4) of the statute. The new statute contains a clause making the amendments retroactive to "offenders who are under the custody or supervision of the department of corrections" on its effective date. The effective date of the statute is May 1, 2001, less than one week after we handed down our opinion in this case.

¶4 Finally, on May 9, 2001, Joshua David Giddings (Giddings) filed a petition for rehearing in *State v. Giddings*, Cause No. 00-113, seeking clarification of our opinion in that case and asking us to direct the District Court to dismiss, with prejudice, the petition to revoke his suspended sentence. Giddings contends that the District Court cannot now acquire jurisdiction as to any revocation of his probation because of the amendment of § 46-23-1012, MCA, and any application of the new statute would violate his right to not be subject to *ex post facto* legislation.

¶5 Rule 34, M.R.App.P., authorizes a rehearing only when

> some fact, material to the decision, or some question decisive of the case submitted by counsel, was overlooked by the court, or that the decision is in conflict with an express statute or controlling decision to which the attention of the court was not directed.

Since no fact material to our decisions in these cases, nor any question decisive of the cases themselves, was overlooked by this Court, nor were our decisions in these cases in conflict with any express statute or controlling decision, we need not modify our opinions in these cases. However, because the question of the retroactive application of this Court's decisions in these cases was raised and briefed by both sides and that question may be of significance to many other cases throughout this State, it merits a response.

¶6 We begin with a discussion of the retroactive application of new judicial rules of criminal procedure and the retroactive application of the judicial interpretation of a statute,

and we conclude with a discussion of whether the retroactive application of the newly amended § 46-23-1012, MCA (2001), to Giddings is a violation of the *ex post facto* clause.

## I. Retroactive application of new judicial rules of criminal procedure[1]

¶7 Prior to 1960, each new constitutional ruling, whether civil or criminal, was applied not only to all cases initiated after the ruling was handed down, but also to all previously initiated cases that were still subject to judicial review. Thus, in criminal cases, a conviction remained subject to attack even after the exhaustion of direct appellate review through the writ of habeas corpus. Courts were required to grant the writ if the petitioner's conviction was obtained through practices currently deemed unconstitutional even if those practices were accepted as constitutional at the time of trial. While courts would ordinarily give the state the opportunity to retry the petitioner, retrial was often impractical due to the lapse in time since the original trial. As the Supreme Court noted, this combination of retroactive application and the availability of the writ of habeas corpus raised the fear that new constitutional rulings might "open[ ] wide the prison doors of the land." *Foster v. Illinois* (1947), 332 U.S. 134, 139, 67 S.Ct. 1716, 1719, 91 L.Ed. 1955.

¶8 Consequently, when the Warren Court in the early 1960s announced a series of new rulings that could affect the convictions of a substantial number of prisoners throughout the United States, the Supreme Court reexamined the practice of complete retroactive application of new constitutional rulings. The Supreme Court, in *Linkletter v. Walker* (1965), 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, first held that a newly adopted constitutional ruling need not be given full retroactive application. In *Linkletter*, the Supreme Court determined that whether a constitutional ruling should be given retroactive effect depended upon the nature of the rule at issue. *Linkletter*, 381 U.S. at 636, 85 S.Ct. at 1741.

¶9 Based on the *Linkletter* doctrine, many of the most precedent-shattering criminal procedural rulings of the 1960s were not given retroactive effect. Among those decisions are *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081; *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; and *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

¶10 Two years after *Linkletter*, the Supreme Court, in *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, formalized a new approach to retroactivity analysis.

The Supreme Court held that a retroactivity analysis required assessment of (a) the purpose to be served by the new standards (what effect the standards had on the accuracy of the truth-finding process), (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards. *Stovall*, 388 U.S. at 297, 87 S.Ct. at 1970.

¶11 The Supreme Court later determined that "[f]oremost among [the *Stovall*] factors is the purpose to be served by the new constitutional rule." *Desist v. United States* (1969), 394 U.S. 244, 249, 89 S.Ct. 1030, 1033, 22 L.Ed.2d 248. Still later, the Supreme Court held that a new rule is to be given complete retroactive effect without regard to the other criteria when the new rule's major purpose is to "overcome an aspect of the criminal trial that substantially impairs its truth-finding function" and it thereby "raises serious questions about the accuracy of guilty verdicts in past trials." *Williams v. United States* (1971), 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388.

¶12 In 1982, the Supreme Court decided to rethink retroactivity and began a gradual departure from the doctrine developed in *Linkletter*. This gradual departure began with *United States v. Johnson* (1982), 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202, wherein the Supreme Court set out three threshold inquiries designed to determine the applicability of retroactivity analysis. First, no retroactivity question arises when an opinion merely applies settled precedents to new and different factual situations. Second, if the new opinion is a "clear break with the past," it should almost always be applied prospectively only. Third, if the new rule goes to the very authority of the trial court to convict or punish a criminal, then the rule must be applied retroactively even if it is a "clear break." *Johnson*, 457 U.S. at 549-50, 102 S.Ct. at 2586-87.

¶13 Additionally, the "clear break" cases were seen to fall into three types: (1) those that explicitly overruled a past decision; (2) those that disapproved an established practice the Supreme Court had sanctioned in prior cases; and (3) those that overturned a longstanding and widespread practice to which the Supreme Court had not spoken but which a near-unanimous body of lower court authority had expressly approved. *Johnson*, 457 U.S. at 551, 102 S.Ct. at 2588. The Supreme Court noted that if a rule met any of these definitions, it generally should not be applied retroactively, but rules that are not clear breaks with the past will always be given retroactive application, at least to cases pending on direct appeal. *Johnson*, 457 U.S. at 562-63, 102 S.Ct. at 2594.

¶14 The *Johnson* Court limited its holding to retroactive application of decisions

construing only the Fourth Amendment. However, in *Shea v. Louisiana* (1985), 470 U.S. 51, 59, 105 S.Ct. 1065, 1069-70, 84 L.Ed.2d 38, the Supreme Court extended *Johnson* beyond Fourth Amendment cases indicating that, with the possible exception of "clear break" cases, new constitutional rulings in all areas would thereafter be applied retroactively to all non-final convictions. Later, in *Griffith v. Kentucky* (1987), 479 U.S. 314, 326-27, 107 S.Ct. 708, 715-16, 93 L.Ed.2d 649, the Supreme Court held that even "clear break" rulings would be applied retroactively to all cases pending on direct review or not yet final at the time of the new ruling, since the adoption of a "clear break" exception for non-final convictions would create the problem of not treating similarly situated defendants the same and would be contrary to "the principle that this Court does not disregard current law when it adjudicates a case pending before it on direct review."

¶15 Thus, it was now firmly settled that a new constitutional rule of criminal procedure, even if it was a "clear break" with the past, would apply to convictions not yet final on the date of the new ruling. However, the *Linkletter/Stovall* rule had been criticized, not only because it refused to apply new rulings to defendants whose convictions were currently pending on direct appeal, but also because it often resulted in applying new rulings on collateral attack to convictions that had been finalized before the new ruling was issued.

¶16 In *Teague v. Lane* (1989), 489 U.S. 288, 300, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334, the Supreme Court determined that retroactivity is properly treated as a threshold question because once a new constitutional rule of criminal procedure is applied to the defendant in the case announcing the rule, "evenhanded justice requires that it be applied retroactively to all who are similarly situated." The Supreme Court held in *Teague* that new constitutional rules of criminal procedure will not be applied retroactively to cases on collateral review unless they fall within one of the following exceptions: (1) where the new rule places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" and (2) where the new rule requires the observance of those procedures that are "implicit in the concept of ordered liberty." *Teague*, 489 U.S. at 310-11, 109 S.Ct. at 1075-76. Hence, the *Teague* Court declared that it will not rule on the merits of a habeas petitioner's claim unless it first concludes that a decision in petitioner's favor will not require a new ruling or will require a new ruling that can be applied retroactively under one of the *Teague* exceptions. *Teague*, 489 U.S. at 315-16, 109 S.Ct. at 1078.

¶17 Subsequently, this Court held in *State v. Egelhoff* (1995), 272 Mont. 114, 125-26, 900 P.2d 260, 267, *rev'd on other grounds by Montana v. Egelhoff* (1996), 518 U.S. 37, 116 S.

Ct. 2013, 135 L.Ed.2d 361, that the *Teague* analysis for determining whether to retroactively apply a new rule to cases on collateral review is binding upon this Court. Four years later, we rejected earlier Montana cases that applied the *Linkletter/Stovall* analysis to determine retroactive application of new state law rulings. *State v. Waters*, 1999 MT 229, 296 Mont. 101, 987 P.2d 1142 (holding that the *Lane* rule that the oral pronouncement of a sentence controls may be applied retroactively to the defendant's case). To that end, we overruled any prior decisions of this Court "which impose[d] an inquiry, multifactored or otherwise, into whether a new judicial rule of criminal procedure is to be applied retroactively or prospectively to a similarly situated criminal defendant whose case is pending on direct review or not yet final." *Waters*, ¶ 20. Instead, we followed the holding set forth by the Supreme Court in *Griffith* and held that all defendants whose cases are pending on direct review or not yet final are entitled to the retroactive application of a new judicial rule of criminal procedure. *Waters*, ¶ 21.

## *II. Retroactive application of the judicial interpretation of a statute*

¶18 Both *Goebel* and *Giddings* differ from *Waters* and the majority of the cases mentioned above because *Goebel* and *Giddings* do not involve a new judicial rule of criminal procedure, but rather, the judicial interpretation of a statute. It is helpful, however, to keep the former in mind while examining the latter.

¶19 Regarding the retroactive application of the judicial interpretation of a statute, the Supreme Court has held that the *ex post facto* clause does not apply because that clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government. *Marks v. United States* (1977), 430 U.S. 188, 191, 97 S. Ct. 990, 992, 51 L.Ed.2d 260. Nevertheless, the Supreme Court has stated that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law" and is thus forbidden. *Bouie v. Columbia* (1964), 378 U.S. 347, 353, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894.

¶20 As explained by the Supreme Court in *Bouie*, if a state legislature is barred from passing an *ex post facto* law, then a state supreme court must be barred by the due process clause from achieving the same result by judicial construction. *Bouie*, 378 U.S. at 353-54, 84 S.Ct. at 1702. Accordingly, under *Bouie*, if a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be applied retroactively. *Bouie*, 378 U.S. at 354, 84 S.Ct. at 1703.

¶21 In a decision handed down only a short time ago, the Supreme Court reaffirmed the limitation expressed in *Bouie* and held that it would serve in the common law context as well. In *Rogers v. Tennessee* (2001), ___ U.S. ___, 121 S.Ct. 1693, 149 L.Ed.2d 697, the Supreme Court had to determine the constitutionality of the retroactive application of a judicial decision abolishing the common law "year and a day" rule under which no defendant could be convicted of murder unless the victim died by the defendant's act within a year and a day of the act. The *Rogers* Court concluded that "a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Rogers*, ___ U.S. at ___, 121 S.Ct. at 1700 (quoting *Bouie*, 378 U.S. at 354, 84 S.Ct. at 1703).

¶22 Following the rule expressed in both *Bouie* and *Rogers*, the two cases before this Court, *Giddings* and *Goebel,* did not represent a construction of § 46-23-1012, MCA (1999), that was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue," because our decisions in those cases interpreted a statute that had not previously been interpreted by this Court.

¶23 Furthermore, in *Rivers v. Roadway Express* (1994), 511 U.S. 298, 312-13, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274, the Supreme Court determined that "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Accord Haugen v. Blaine Bank* (1996), 279 Mont. 1, 8, 926 P.2d 1364, 1368. Thus, a court's interpretation of a statute is never new law because the decision declares what the statute meant from the day of its enactment, not from the date of the decision.

*III. Whether the retroactive application of the newly amended § 46-23-1012, MCA (2001), to Giddings is a violation of the ex post facto clause.*

¶24 Giddings was arrested pursuant to a warrant issued by his probation officer. The following day, however, he was also served with a warrant for his arrest issued by the District Court. Consequently, we determined in Giddings' case that because the probable cause hearing provided for in § 46-23-1012(4), MCA (1999), was never held, the District Court lacked jurisdiction to hold a revocation hearing. Giddings now argues in his petition for rehearing, that any retroactive application of the newly amended statute to him would violate his right to not be subject to *ex post facto* legislation.

¶25 The State, on the other hand, argues that the retroactive application of § 46-23-1012, MCA (2001), does not violate the ban against *ex post facto* legislation because the amendments do not materially affect Giddings' rights. The State maintains that Giddings was afforded a probable cause hearing at the time the bench warrant was issued and due process does not require two probable cause inquiries.

¶26 We agree with the State's contention that the relevant inquiry is whether retroactive application of a particular change in the law creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Garner v. Jones* (2000), 529 U.S. 244, 250, 120 S.Ct. 1362, 1367, 146 L.Ed.2d 236 (holding that a rule enacted by the state parole board which extended the time period between parole eligibility hearings from three to eight years did not constitute *ex post facto* legislation because it did not increase the punishment attached to the crimes).

¶27 The Supreme Court has defined an *ex post facto* law as one "that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action, or that aggravates a crime, or makes it greater than it was, when committed." *Bouie*, 378 U.S. at 353, 84 S.Ct. at 1702. In Giddings' situation, amending the statute to not require a probable cause hearing within 36 hours of a probationer's arrest, does not make an innocent action criminal, nor does it aggravate a crime or make it greater than it was. The statute itself has no effect on Giddings' conduct that violated his probation. And, as the State points out, the fact that Giddings is no longer entitled to an administrative probable cause hearing does not create a risk of increased punishment where the District Court has already determined that probable cause existed when it issued the bench warrant for Giddings arrest.

¶28 The purpose of the *ex post facto* constitutional prohibition is to ensure that legislative enactments "give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed." *Weaver v. Graham* (1981), 450 U.S. 24, 28-29, 101 S. Ct. 960, 964, 67 L.Ed.2d 17 (citations omitted). Changes in procedure which do not affect substantial rights do not implicate the prohibition against *ex post facto* laws. *See State v. Duffy*, 2000 MT 186, ¶ 31, 300 Mont. 381, ¶ 31, 6 P.3d 453, ¶ 31. In *Duffy*, this Court used a two-part test to determine whether a statute violates the ban on *ex post facto* laws: (1) the law must be retrospective, and (2) it must disadvantage the offender affected by it. *Duffy*, ¶ 29 (citing *State v. Leistiko* (1992), 256 Mont. 32, 36-37, 844 P.2d 97, 100).

¶29 Here, the 2001 Legislature included a clause in the amendments to § 46-23-1012,

MCA, giving the statute retrospective application. However, Giddings is not disadvantaged in the constitutional sense by the retroactive application of § 46-23-1012, MCA (2001), because the statute did not alter the definition of or the punishment for the probation violations with which he is charged. *See Duffy*, ¶ 31.

¶30 Furthermore, as the State pointed out in its response to Giddings' petition for rehearing, the error which was the basis for reversal was identified in the opinion as "jurisdictional," meaning that all proceedings in the District Court are void *ab initio* and the State is thus entitled to proceed anew as if no District Court proceedings had occurred. *See State v. Vickers,* 1998 MT 201, 290 Mont. 356, 964 P.2d 756 (holding that search warrants issued by a justice of the peace who was not duly authorized were void *ab initio*). Moreover, we have stated that "[j]urisdiction is the power to hear and determine the particular action or proceeding as well as to make such orders and render such judgment therein *as the law authorizes* in the class of actions or proceedings to which it belongs." *State v. Moorman* (1996), 279 Mont. 330, 336, 928 P.2d 145, 148 (emphasis added) (quoting *State ex rel. Johnson v. District Court* (1966), 147 Mont. 263, 267, 410 P.2d 933, 935). In Giddings' case, "to proceed anew," the State and the District Court must follow the procedure outlined in the newly amended statute which became effective May 1, 2001, and by its own provision may be applied retroactively to "offenders who are under the custody or supervision of the department of corrections on [May 1, 2001]."

## IV. Conclusion

¶31 Consequently, based on both the United States Supreme Court and Montana Supreme Court precedent outlined above, this Court's interpretation of § 46-23-1012, MCA (1999), as set forth in both *Giddings* and *Goebel* may be applied retroactively to all similarly situated individuals because it is a declaration of what the statute meant from the day of its enactment, not just from the date of our decision. In other words, the statute applies to those individuals whose probation or parole was revoked between April 28, 1999, the effective date of § 46-23-1012, MCA (1999), and May 1, 2001, the effective date of § 46-23-1012, MCA (2001). If, during that time period, the probationer was arrested pursuant to a warrant issued by a judge and the probationer was not afforded a probable cause hearing within 36 hours of the probationer's arrest, then, like Giddings, the District Court did not have jurisdiction to hold a revocation hearing. If, however, the probationer was afforded a probable cause hearing within 36 hours of arrest or the probationer was arrested pursuant to a warrant issued by a probation officer, in which case no probable cause hearing was required, then the District Court did have jurisdiction to hold a revocation

hearing.

¶32 While Giddings, and others who are similarly situated, were not afforded a hearing pursuant to § 46-23-1012, MCA (1999), and thus the District Court lacked jurisdiction to hold a revocation hearing in their cases, the State may now refile the petition to revoke their probation pursuant to § 46-23-1012, MCA (2001), as long as those probationers were still "under the custody or supervision of the department of corrections" on May 1, 2001. Therefore,

IT IS ORDERED that except to the extent herein clarified, the parties' petitions for rehearing are denied.

IT IS FURTHER ORDERED that the Clerk of this Court give notice of this order by mail to counsel of record.

DATED this 14th day of August, 2001.

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

1. For a more detailed discussion of retroactivity, see Wayne R. LaFave et al., *Criminal Procedure* § 2.10 (2d ed. 1999), and Charles H. Whitebread & Christopher Slobogin, *Criminal Procedure: An Analysis of Cases and Concepts* § 29.06 (4th ed. 2000).