JUSTICE NELSON
delivered the Opinion of the Court.
¶1 Zane Carter (Carter) appeals from the judgment entered by the District Court of the Eighth Judicial District, Cascade County, on a jury verdict finding him guilty of the offense of driving while under the influence of alcohol (DUI). We affirm.
¶2 On appeal, we address the following issues:
¶3 1. Is Carter’s appeal properly before this Court?
¶4 2. In a criminal trial for DUI, is the Sixth Amendment right to confront witnesses implicated when the State introduces a certification report for a breath analysis instrument without also providing the author of the report for cross-examination?
*429 FACTUAL AND PROCEDURAL BACKGROUND
¶5 Carter was driving through Great Falls on May 14,2002, when he was pulled over by Officer Michael Reddick of the Montana Highway Patrol. Officer Reddick stopped Carter after seeing him drive recklessly near a group of pedestrians. When Carter exited his vehicle, Officer Reddick noticed the odor of alcohol on him. Because Reddick was about to go off duty, he turned the matter over to Officer Robert Armstrong of the Montana Highway Patrol, who had also observed Carter’s reckless driving. Armstrong also noticed the smell of alcohol on Carter.
¶6 Carter was arrested after he failed the field sobriety tests administered by Officer Armstrong. Carter consented to a breath alcohol test, which was administered with the Intoxilizer 5000. The test registered a result of .210. Carter was charged with one count of misdemeanor DUI, one count of misdemeanor failure to carry proof of liability insurance, and one count of misdemeanor driving with a suspended license. After a jury trial in Cascade County Justice Court on July 23, 2002, Carter was convicted on all three counts. Carter appealed to the District Court. Subsequently, the charge of driving with a suspended license was dismissed.
¶7 At Carter’s District Court jury trial on May 29, 2003, the State introduced three certification reports in order to demonstrate that the Intoxilizer 5000 was working properly when it was used to test Carter. First, the State introduced two weekly field certification reports. One was prepared by Deputy Troy Leasure, of the Cascade County Sheriffs Department. The other was prepared by Deputy Kenneth Wienheimer, also of the Cascade County Sheriffs Department. Then, the State introduced the yearly certification report prepared by Benny Better of the Montana State Crime Lab. After testifying that he was the senior operator for the Intoxilizer 5000, Deputy Leasure testified that each of these reports indicated that the machine had tested within the acceptable range for certification.
¶8 Carter objected to the admission of the weekly field certification report prepared by Deputy Wienheimer, arguing that it was hearsay because Wienheimer was not present to testify. Carter also objected to the admission of the yearly certification report prepared by the Montana State Crime Lab, arguing that it was hearsay because the author was not present to testify. Finally, Carter objected to the admission of the Montana State Crime Lab report on the grounds that the State had failed to provide the necessary foundation. In support of this objection, Carter argued the State needed to demonstrate that the *430 author fully understood the inner workings of the Intoxilizer 5000. The District Court admitted both reports over Carter’s objections.
¶9 Carter was convicted of misdemeanor DUI and misdemeanor failure to carry proof of liability insurance. Carter appeals his DUI conviction and requests a new trial on the grounds that the admission of the weekly and yearly certification reports is a violation of his Sixth Amendment confrontation right.
DISCUSSION
Issue 1.
¶10 Is Carter’s appeal properly before this Court?
¶11 Because Carter asserts a legal theory that was not raised at trial, the threshold issue is whether this Court should consider the merits of his argument. As noted above, Carter objected to the admission of two certification reports which the State proffered to demonstrate that the Intoxilizer 5000 was working properly when it was used to test him. One of these reports was a weekly field certification prepared by Deputy Wienheimer. The other was a yearly certification prepared by the Montana State Crime Lab. The District Court admitted both reports over Carter’s hearsay objections.
¶12 Carter’s appeal focuses on these same two pieces of evidence, but he no longer stands by his original hearsay objections. Instead, he now asserts a theory that was not available to him at trial. Carter’s argument is based on Crawford v. Washington (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, which established a new constitutional rule of criminal procedure while Carter’s case was on direct appeal before us. Carter now argues that admission of the certification reports, when the authors are not present for cross-examination, is a violation of the Confrontation Clause of the Sixth Amendment to the United States Constitution pursuant to Crawford. Further, Carter argues that Crawford should be applied retroactively in his case, pursuant to State v. Whitehorn, 2002 MT 54, 309 Mont. 63, 50 P.3d 121, and that retroactive application mandates a new trial wherein he is entitled to confront the authors of these certification reports regarding the procedures they used to maintain the Intoxilizer 5000. In response, the State suggests that we decline review of Carter’s Sixth Amendment claim because his objections at trial were not based on his right of confrontation. In supporting this position, the State cites the firmly established rule that a party may not raise new arguments or change its legal theory on appeal. State v. Heath, 2004 MT 58, ¶ 39, 320 Mont. 211, ¶ 39, 89 P.3d 947, ¶ 39.
*431 ¶13 While we generally do not consider arguments first raised on appeal, our precedent clearly establishes that review of such arguments is proper in certain circumstances. We have stated:
[T]he general rule is that issues brought before this Court for the first time on appeal will not be considered. [Citation omitted.] However, this Court “reserves to itself the power to examine constitutional issues that involve broad public concerns to avoid future litigation on a point of law.” Even if an issue is raised for the first time on appeal this Court can hear the issue “if the alleged ... error affects the substantial rights of a litigant.”
Cottrill v. Cottrill Sodding Serv. (1987), 229 Mont 40, 42, 744 P.2d 895, 896 (quoting Matter of N.B. (1980), 190 Mont. 319, 323, 620 P.2d 1228, 1231). Due to our commitment to the general rule against raising new arguments on appeal, we do not often utilize the Cottrill rationale, the plain error doctrine, or other precedents which allow us to review arguments first raised on appeal. However, our commitment to that general rule does not negate our overriding obligation to acknowledge and protect the substantial rights of litigants. This overriding obligation is well reflected in the firmly established Cottrill exception to the general rule.
¶ 14 Other precedent issued from this Court provides further rationale for departing from the general rule in certain circumstances. In Kudrna v. Comet Corp. (1977), 175 Mont. 29, 572 P.2d 183, we considered an issue that was not raised below, noting that by doing so we did not repudiate the requirement that timely and specific objections be raised at trial. We observed that “[i]f the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of its own observations, many cases would lead us far from what we understand to be the true object of the court.” Kudrna, 175 Mont, at 51, 572 P.2d at 195 (quoting Big Creek Stone Co. v. Seward (Ind. 1896), 43 N.E. 5, 5). We also stated that “[w]here resort to the record is necessary, the case will be determined by the record, and in such a case the court will not regard itself as bound down to the conceptions of counsel on either side as to the nature of the controlling facts.” Kudrna, 175 Mont, at 51, 572 P.2d at 195 (quoting Cleveland, Cine., Chic. & St. Louis Ry. Co. v. Moore (Ind. 1908), 84 N.E. 540, 540). Hence, it is evident that in the same way which we are not bound to render decisions based solely on the reasoning offered by appellate counsel, our review is not necessarily restricted by trial counsel’s failure to preserve a specification of error for appeal.
¶15 We have previously encountered an appeal similar to the one we *432 face here. In State v. Hardy (1980), 185 Mont. 130, 604 P.2d 792, the defendant contested for the first time on appeal a jury instruction given at his trial because that instruction was later declared unconstitutional by the United States Supreme Court. Hardy, 185 Mont, at 137, 604 P.2d at 797. Because the instruction was declared unconstitutional while the defendant’s appeal was pending, we reviewed the defendant’s argument even though it was not raised at trial. Hardy, 185 Mont, at 137-38, 604 P.2d at 797. Hardy thus provides a basis for considering an argument first raised on appeal where that argument is based on a new constitutional rule of criminal law established during the appeal. Here, Carter’s predicament is similar to that of the defendant in Hardy, in that Carter had no opportunity to make a timely confrontation argument based on Crawford because that case was decided more than nine months after his trial.
¶16 Returning to the Cottrill exception, we note that it is well established by its use in recent years to justify review of constitutional claims not raised at the lower court. In Eastman v. Atlantic Richfield Co. (1989), 237 Mont. 332, 337, 777 P.2d 862, 865, we invoked the exception to review two untimely constitutional challenges to the Occupational Disease Act. More recently, in In the Petition to Transfer Territory, 2000 MT 342, ¶ 11, 303 Mont. 204, ¶ 11, 15 P.3d 447, ¶ 11, we invoked the exception to consider the constitutionality of a statute giving authority to county superintendents of schools to grant or deny petitions to transfer territory among school districts.
¶17 Our review of the record in Carter’s case leads us to conclude that this appeal contains the elements necessary for invoking the Cottrill exception. The substantial right at issue here is Carter’s Sixth Amendment right to confront witnesses against him. By reviewing the merits of Carter’s argument we can avoid future litigation on the issue of whether certification reports for breath testing instruments represent “testimonial” hearsay which triggers the protections of the Sixth Amendment’s Confrontation Clause. Finally, broad public concern is implicated by Carter’s contention that the State is obligated to provide State Crime Lab personnel at DUI trials to testify regarding the certification reports. As such, we conclude that review of Carter’s argument is proper pursuant to Cottrill, Kudrna, and Hardy.
¶18 Finally, we observe that appellate review of Carter’s argument flows logically from the requirements of retroactivity law. Once a new constitutional rule of criminal procedure is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be *433 applied retroactively to all who are similarly situated. State v. Goebel, 2001 MT 155, ¶ 16, 306 Mont. 83, ¶ 16, 31 P.3d 340, ¶ 16 (citing Teague v. Lane (1989), 489 U.S. 288, 300, 109 S.Ct. 1060, 1070, 103 L.Ed.2d 334). Thus, we apply new constitutional rules of criminal procedure retroactively to cases pending on direct review or not yet final on the date of the new ruling. Goebel, ¶¶ 14-17 (citing Griffith v. Kentucky (1987), 479 U.S. 314, 326-27, 107 S.Ct. 708, 715-16, 93 L.Ed.2d 649). As noted above, Crawford announced a new constitutional rule of criminal procedure while Carter’s case was pending on direct review before this Court. Carter argues that Crawford is applicable to his case and, had it been decided at the time, Crawford would have dictated the use of different procedures at his trial. If Crawford is in fact applicable here, Carter is entitled to retroactive application of the new rule established therein. Thus, to determine whether the new rule enunciated in Crawford should be applied retroactively in this case, we must examine Carter’s argument. The Cottrill exception allows us to reach the merits of Carter’s claim and determine whether the new rule of Crawford applies here.
¶19 In summary, we reiterate our commitment to the general rule against raising new arguments on appeal. At the same time, however, we are compelled to take into account the unique circumstances of Carter’s appeal with respect to the recent development in Confrontation Clause jurisprudence. Strict adherence to the general rule, in spite of Carter’s inability to timely raise the Crawford argument, is not appropriate here. As we observed in Kudrna, such an approach could occasionally “lead us far from what we understand to be the true object of the court.” Kudrna, 175 Mont, at 51, 572 P.2d at 195. Ultimately, our decision to review Carter’s argument harmonizes well with our previous invocations of the Cottrill exception.
Issue 2.
¶20 In a criminal trial for DUI, is the Sixth Amendment right to confront witnesses implicated when the State introduces a certification report for a breath analysis instrument without also providing the author of the report for cross-examination?
¶21 In determining whether the procedure followed at Carter’s trial complies with the Sixth Amendment, we address a question of constitutional law. We exercise plenary review of questions of constitutional law. Pickens v. Shelton-Thompson, 2000 MT 131, ¶ 7, 300 Mont. 16, ¶ 7, 3 P.3d 603, ¶ 7.
¶22 The Sixth Amendment to the United States Constitution provides *434 that, “[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” This procedural guarantee, the Confrontation Clause, applies to both federal and state prosecutions. Pointer v. Texas (1965), 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923. The ultimate goal of the Confrontation Clause is to ensure the reliability of evidence “by testing in the crucible of cross-examination.” Crawford, 541 U.S. at 61, 124 S.Ct. at 1370.
¶23 As noted above, Carter’s argument is based on Crawford, a case that was born out of the inherent tension between the Confrontation Clause and exceptions to the general evidentiary rule against admitting hearsay at trials. In Crawford, the Court overruled its prior interpretation of the Confrontation Clause established in Ohio v. Roberts (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597. Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. Roberts held that an unavailable witness’s out-of-court statement may be admitted at trial against a criminal defendant so long as it has adequate indicia of reliability-i.e., falls within a “firmly rooted hearsay exception” or bears “particularized guarantees of trustworthiness.” Roberts, 448 U.S. at 66, 100 S.Ct. at 2539. In rejecting this approach, Crawford observed that reliability is an amorphous concept and stated that the Roberts framework “is so unpredictable that it fails to provide meaningful protection from core confrontation violations.” Crawford, 541 U.S. at 63, 124 S.Ct. at 1371.
¶24 In Crawford, the Court reviewed historical developments underlying the meaning of the Confrontation Clause and, for the first time, distinguished “testimonial” and “nontestimonial” out-of-court statements. Crawford, 541 U.S. at 51-52, 124 S.Ct. at 1364. The Court held that testimonial out-of-court statements are not admissible at trial under the Confrontation Clause, unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.
¶25 While declining to spell out a comprehensive definition of the term “testimonial,” the Court held:
Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.
Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. The Court also observed that not all hearsay evidence implicates the Sixth Amendment’s core concerns. Crawford, 541 U.S. at 51, 124 S.Ct. at 1364. Consequently, Crawford held that where nontestimonial hearsay is at issue, States *435 are allowed flexibility in the development of their hearsay law. Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.
¶26 In the present case, Carter requests a new trial based on Crawford’s new interpretation of the Confrontation Clause. Specifically, Carter argues that the certification reports admitted at his trial are properly categorized as testimonial hearsay pursuant to Crawford, and thus, admission of such reports is a violation of the Confrontation Clause when the authors are not present for cross-examination. Further, Carter argues that because a constitutional right is at issue in this case, Crawford should be applied retroactively. Finally, Carter argues that retroactive application of Crawford requires a new trial wherein he is entitled to confront the authors of the two contested certification reports regarding the procedures they used to maintain the Intoxilizer 5000.
¶27 The State contends that the procedure followed at Carter’s trial was in compliance with the new ride of Crawford. The State’s argument is based on State v. Delaney, 1999 MT 317, 297 Mont. 263, 991 P.2d 461, a DUI case where the State introduced a yearly certification report for the Intoxilizer 5000 in order to establish foundation for the admission of breath test results. Delaney, ¶ 10. The defendant in that case, Robert Delaney, argued that his constitutional right to confront witnesses was violated when the State introduced the certification report without also presenting the author of the report for cross-examination. Delaney, ¶ 17. We held that Delaney had not established a violation of his confrontation right because the annual certification report was not substantive evidence used to prove the charged DUI offense, but it merely provided the foundation necessary for the admission of substantive evidence. Delaney, ¶ 18.
¶28 In Delaney, we distinguished State v. Clark, 1998 MT 221, 290 Mont. 479, 964 P.2d 766, wherein we held that the hearsay exception in Rule 803(8), M.R.Evid., which allowed admission of a state crime laboratory report into evidence without the testimony of the compiler of the report, was unconstitutional because it violated the defendant’s right to confrontation. Clark, ¶ 25. Delaney relied on Clark in arguing that his confrontation right had been violated. Delaney, ¶ 17. Delaney contended that at his trial the State had offered the annual certification report as a state crime laboratory report pursuant to language in Rule 803(6), M.R.Evid., which is identical to the portion of Rule 803(8) held unconstitutional in Clark, and as a result, his right to confrontation was violated in the same manner as the defendant’s in that case. Delaney, ¶ 17. In distinguishing Clark, we explained in *436 Delaney that the evidence offered under the state crime laboratory report hearsay exception in Clark was a report of the chemical analysis of alleged drugs taken from the defendant when he was arrested. Delaney, ¶ 18. That chemical analysis was a critical part of the substantive evidence offered by the prosecution to prove that the defendant had committed the offense of criminal possession of dangerous drugs. Clark, ¶ 24. Thus, we concluded in Clark that failing to call the compiler of the chemical analysis report violated the defendant’s right to confront his accusers. Clark, ¶ 25. More importantly for this case, in Delaney we explained that Clark was distinguishable from Delaney’s situation because the annual certification report used in Delaney was not accusatory in the same manner as the chemical analysis in Clark. Delaney, ¶ 18. Finally, we concluded that because the certification report used in Delaney was not offered or admitted pursuant to the state crime laboratory hearsay exception, Clark was inapplicable. Delaney, ¶ 19.
¶29 Our decision in this case turns on the issue of whether the certification reports are properly categorized as testimonial or nontestimonial evidence. Carter contends that testimonial evidence includes “statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.” Crawford, 541 U.S. at 52, 124 S.Ct. at 1364. Based on this definition, Carter contends that the certification reports at issue here are properly categorized as testimonial evidence because they were created for use at trial.
¶30 We observe that while Crawford did mention the above definition for testimonial evidence, it did so only in noting various proposed formulations of the core class of statements with which the Confrontation Clause is concerned. Crawford, 541 U.S. at 51-52, 124 S.Ct. at 1364. Crawford also mentioned the following formulations: ex parte in-court testimony or its functional equivalent, meaning material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; and, extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions. Crawford, 541 U.S. at 51-52, 124 S.Ct. at 1364. However, Crawford did not adopt any of the above definitions, and declined to articulate a precise definition for testimonial evidence. Crawford, 541 U.S. at 68, 124 S.Ct. at 1374.
¶31 Ultimately, Crawford designated only four kinds of statements as *437 testimonial: prior testimony given at a preliminary hearing, before a grand jury, or at a former trial, and statements gleaned from police interrogations. Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. Similarly, we will not attempt to articulate a precise definition of testimonial evidence. We will only determine whether the evidence at issue here is properly categorized as testimonial or nontestimonial.
¶32 The State argues that the certification reports used at Carter’s trial are nontestimonial evidence because they do not fall within the core group of statements which the Confrontation Clause was meant to address, and thus do not implicate Carter’s right of confrontation. We agree. As we stated in Delaney, such certification reports are not substantive evidence of a particular offense, but rather are foundational evidence necessary for the admission of substantive evidence. Delaney, ¶ 18. In other words, the certification reports are nontestimonial in nature in that they are foundational, rather than substantive or accusatory. In the same way that the defendant’s confrontation right was not implicated in Delaney, Carter’s confrontation right was not implicated by the use of these certification reports, despite the fact that the authors of the reports were not present to testify and be confronted.
¶33 That is not to say, however, that the authors of these certification reports may never be called to testify in person. If, in a given case, the defendant’s pretrial investigation reveals that the reports are in error or are otherwise subject to attack, the defendant is always free to subpoena the authors for purposes of testifying at a hearing on a timely filed motion to suppress evidence or at trial for impeachment purposes.
¶34 Crawford established that where nontestimonial hearsay is at issue, the United States Constitution affords the States flexibility in forming their hearsay law, and such evidence may be exempted from Confrontation Clause scrutiny. Crawford, 541 U.S. at 68, 124 S.Ct. at 1374. Thus, we adhere to the rationale of Delaney and hold that the nontestimonial pieces of evidence at issue here, the weekly and yearly certification reports for the Intoxilizer 5000, do not implicate Carter’s constitutional right of confrontation. Therefore Carter is not entitled to a new trial.
¶35 Affirmed.
JUSTICES LEAPHART, WARNER and COTTER concur.