No. 02-400

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 153

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

THOMAS E. VAN HAELE,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Sixteenth Judicial District,
                    In and for the County of Treasure, Cause No. DC 92-01
                    The Honorable Gary L. Day, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

                Robert L. Stephens Jr., Southside Law Center, Billings, Montana

        For Respondent:

                Honorable Mike McGrath, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana; Gary Ryder, Treasure County Attorney, Hysham, Montana


Submitted on Briefs:  January 27, 2004

Decided:   June 14, 2005

Filed:

_____
                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Thomas E. Van Haele (Van Haele) appeals the judgment of the Sixteenth Judicial District Court, Treasure County, which revoked the suspension of his sentence.

¶2    We affirm.

¶3    We address the following issues on appeal:

¶4    1. Whether the District Court erred when it did not dismiss the State's amended petition for revocation of suspended sentence for want of jurisdiction.

¶5    2. Whether the District Court erred when it did not dismiss the State's amended revocation petition on the grounds that the condition of his probation which Van Haele failed to fulfill had been imposed thereon without a prior opportunity for hearing.

¶6    3. Whether Van Haele's refusal to participate in sex-offender treatment while in prison, and his failure to gain admission to an outpatient sex-offender treatment program after his release from prison pursuant to the suspension of his sentence, were properly based upon the right, guaranteed by the Fifth Amendment to the United States Constitution, not to incriminate oneself.

¶7    4. Whether the District Court erred when it found that there was no deviation between the District Court's original oral sentencing order and its subsequent written sentencing order.

¶8    5. Whether the District Court impermissibly applied the law *ex post facto* by imposing on Van Haele's eligibility for probation the condition that he complete the first two phases of sexual offender treatment while in prison.

¶9    6. Whether the District Court abused its discretion in admitting into evidence the sex offender risk assessments offered by the State without requiring such an evidentiary foundation as would meet the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469.

¶10    7. Whether the District Court erred in denying Van Haele's motion to dismiss for the denial of his right to a speedy hearing.

¶11    8. Whether the District Court erred in denying Van Haele's motion to withdraw his original plea of guilty.

## FACTUAL AND PROCEDURAL BACKGROUND

¶12    With leave having been granted by the District Court, the State filed a criminal information against Van Haele on January 10, 1992. As amended on January 17, 1992, the information charged him with five felony offenses: two counts of sexual intercourse without consent, in violation of § 45-5-503, MCA, and three counts of incest, in violation of § 45-5-507, MCA.

¶13    Van Haele was arraigned on January 17, 1992. On April 7 of that year, the District Court accepted his plea of guilty to Counts II (sexual intercourse without consent) and V (incest) of the amended information, and granted the State's motion to dismiss the three remaining charges. The District Court conducted a sentencing hearing on June 5, 1992, at the conclusion of which it pronounced sentence from the bench. In its subsequent Order, dated June 10, 1992, the District Court sentenced Van Haele to thirty years of imprisonment on Count II, and to twenty years of imprisonment on Count V. Furthermore, fifteen years

3

of Van Haele's thirty-year prison sentence on Count II, and five years of his twenty-year prison sentence on Count V, were to be suspended, and the two fifteen-year terms resulting from these suspensions of sentence were to be served concurrently. The District Court thus imposed upon Van Haele a total of fifteen years of imprisonment. Van Haele was then committed to the custody of the Department of Corrections, that he might begin serving his sentence in the Montana State Prison.

¶14 Van Haele was scheduled to be released from prison on probation on March 22, 2000. In anticipation of this prospective event, the State petitioned for the revocation of Van Haele's suspended sentence on February 29, 2000, on the grounds that the District Court had conditioned the suspension and probation upon his completing the first two phases of the prison's sexual offender treatment program, but that Van Haele had failed to do so. On March 2, 2000, the District Court responded to the State's petition by issuing a bench warrant for Van Haele's arrest. A writ of *mandamus* later issued which prohibited the Department of Corrections from releasing Van Haele until he should complete the first two phases of sexual offender treatment at the Montana State Prison.

¶15 Van Haele petitioned this Court for writ of *habeas corpus* on April 4, 2000, and for writ of supervisory control on April 7, 2000. He argued that, under *State v. Lane*, 1998 MT 76, 288 Mont. 286, 957 P.2d 9, the original oral sentencing order controlled over the written one; that the oral sentencing order did not condition Van Haele's release on his completion of Phases I and II of the prison's sexual offender treatment program; that the District Court's bench warrant was premised on the assumption that the oral sentencing order had imposed

4

such a condition; and that therefore Van Haele's failure to fulfill this condition could not legally prevent his release. By Order entered June 1, 2000, we granted Van Haele's petition for writ of *habeas corpus* on these grounds.

¶16 The very next day, June 2, 2000, Van Haele was arrested pursuant to the District Court's bench warrant of March 2, 2000, prior to actually being released from Montana State Prison. The State appears to shift its emphasis in its ensuing request for judicial review, filed on the day Van Haele's arrest occurred, from his failure to participate in the prison sexual offender treatment program (an argument we had rejected in our June 1, 2000 Order) to the prospect that he would be unable to complete the outpatient treatment, a condition of the suspension of his sentence, due to that failure.

¶17 Despite this shift of ground, on June 12, 2000, Van Haele argued, in his petition for release, that our June 1 Order was *res judicata* as to his continued incarceration. We accepted this argument and granted his petition by Order dated July 18, 2000.

¶18 The State petitioned us on July 28, 2000, to reconsider. By Order dated August 22, 2000, we reversed our Order of July 18 on the grounds that the June 1 Order did not preclude the factual determination that Van Haele was unable to gain admission to an outpatient sexual offender treatment program, and that he would therefore fail to fulfill a condition of the suspension of his sentence. We remanded the case to the District Court for a ruling on the State's revocation petition.

¶19 The District Court conducted a hearing regarding the State's amended revocation petition on November 20 and November 21, 2001. On March 12, 2002, the District Court

5

issued its written order granting the State's amended petition to revoke Van Haele's suspended sentence. This appeal followed.

¶20 We will introduce further facts as they become relevant to our discussion of the issues which Van Haele raises on appeal.

## DISCUSSION

¶21 *1. Whether the District Court erred when it did not dismiss the State's amended petition for revocation of suspended sentence for want of jurisdiction.*

¶22 We review a district court's decision to revoke a suspended sentence to determine whether the court abused its discretion. *State v. Lindeman* (1997), 285 Mont. 292, 302, 948 P.2d 221, 228. Where the issue is whether the court had authority to take a specific action, however, the question is one of law over which our review is plenary. *State v. Nelson,* 1998 MT 227, ¶ 16, 291 Mont. 15, ¶ 16, 966 P.2d 133, ¶ 16.

¶23 As noted, Van Haele was arrested on June 2, 2000, pursuant to probation revocation proceedings instituted by the State. *See* ¶ 16, above. Under the version of the relevant statute then in force, § 46-23-1012, MCA (1999), Van Haele was entitled to a probable cause hearing within thirty-six hours of his arrest. Section 46-23-1012(4), MCA (1999). The State concedes that Van Haele was not afforded such a hearing within the specified period, and the latter argues that this failure permanently deprived the District Court of jurisdiction over the State's revocation petition. We disagree.

¶24 In *State v. Goebel*, 2001 MT 155, 306 Mont. 83, 31 P.3d 340, we determined that § 46-23-1012, MCA (1999), applied to those individuals whose probation was revoked

6

between April 29, 1999 (the statute's effective date) and May 1, 2001 (the effective date of the legislature's 2001 revisions to the statute). We held that:

> If, during that time period, the probationer was arrested pursuant to a warrant issued by a judge, and the probationer was not afforded a probable cause hearing within 36 hours of the probationer's arrest, then . . . the District Court did not have jurisdiction to hold a revocation hearing.

*Goebel*, ¶ 31. The District Court revoked Van Haele's probation within this period, *see* ¶ 19, above, and no probable cause hearing was conducted regarding Van Haele within thirty-six hours of his arrest, *see* ¶ 22, above.

¶25    We also held, however, that under these circumstances the State is entitled to proceed anew on an amended petition:

> [T]o proceed anew, the State and the District Court must follow the procedure outlined in the newly amended statute which became effective May 1, 2001, and by its own provision may be applied retroactively to offenders who are under the custody or supervision of the department of corrections on [May 1, 2001] (internal quotation marks omitted).

*Goebel*, ¶ 30. It is undisputed that Van Haele was in the custody of the Department of Corrections on this date.

¶26    The State followed the indicated procedure. In light of *Goebel*, the State instituted a formal revocation proceeding, pursuant to § 46-23-1012(1), MCA (2001), on August 21, 2001. The District Court conducted a hearing on this amended petition for revocation on November 10 and 11, 2001, denied Van Haele's motion to dismiss, and granted the petition by Order dated March 12, 2002. We conclude as a matter of law that the District Court did not err in denying Van Haele's motion to dismiss the State's petition for want of jurisdiction.

7

¶27    *2. Whether the District Court erred when it did not dismiss the State's amended revocation petition on the grounds that the condition of his probation which Van Haele failed to fulfill had been imposed thereon without a prior opportunity for hearing.*

¶28    The District Court, in its March 12, 2002 Order to Revoke Suspension of Sentence, based the revocation upon Van Haele's failure to qualify for admission into a certified outpatient sexual offender treatment program, a fact which, it ruled, placed Van Haele in violation of the terms and conditions of his suspended sentence. *See* § 46-18-203, MCA.

¶29    Van Haele, however, claims that the condition was "added after the original conditions of probation were signed by the Defendant, and only after his Court[-]ordered release from Montana State Prison." He cites § 46-23-1011(4), MCA, which provides that any modification of the conditions of probation must be approved by the appropriate district court before it can become effective as to the probationer, and notes that the record is devoid of reference to any court's approval of such a modification. He thus argues that the basis upon which the District Court revoked his probation--his failure to gain entry into a certified outpatient sexual offender treatment program--is invalid. We disagree.

¶30    The requirement under discussion could not have been added to the District Court's original sentencing order because it formed part of the original order, in both the latter's oral and written forms. The District Court found in its March 12, 2001 Order to Revoke Suspension of Sentence that the probation officer had recommended outpatient sexual offender treatment for Van Haele as a condition of his probation. The District Court also found that the oral sentence expressly adopted this recommendation. Having inspected both the probation officer's pre-sentence report and the transcript of the sentencing hearing, we

8

hold that the District Court did not clearly err in so finding. *See Galassi v. Lincoln County Bd. of Com'rs*, 2003 MT 319, ¶ 7, 318 Mont. 288, ¶ 7, 80 P.3d 84, ¶ 7.

¶31 The District Court also found that the written version of Van Haele's sentence, dated June 10, 1992, likewise conditioned Van Haele's probation upon his participation in outpatient sexual offender treatment. The District Court based this finding upon the following passage from the written sentence:

> Upon release from prison, the Defendant must continue receiving out-patient treatment through a Certified Sexual Offender Treatment Program as recommended by the prison in-house professionals, for which the Defendant will be financially responsible; and until no longer deemed necessary by the Sexual Offender Professional[.]

¶32 The District Court thus found that the oral and written versions of Van Haele's original sentence agree in conditioning the suspension of Van Haele's sentence upon his participation in a certified sexual offender treatment program. We conclude that the District Court did not clearly err in so finding, and we therefore rule that the basis upon which the District Court revoked the suspension of Van Haele's sentence is not invalid on the grounds alleged by Van Haele.

¶33 ***3. Whether Van Haele's failure to gain admission to an outpatient sex-offender treatment program after his release from prison pursuant to the suspension of his sentence was properly based upon the right, guaranteed by the Fifth Amendment to the United States Constitution, not to incriminate oneself.***

¶34 Van Haele began serving his sentence in the Montana State Prison on June 12, 1992. He signed an agreement on June 26, 1992, to follow a treatment plan, and applied for admission to the first phase of treatment on the same day. By February 1993, however, Van

9

Haele was refusing to participate in sex-offender treatment on the grounds that to do so would require him to admit that he was guilty of the charges for which he had been sentenced, and that such a requirement would violate the right, guaranteed to him by the Fifth Amendment to the United States Constitution, not to incriminate himself. Though he resumed treatment in 1994, from 1996 onwards he again refused to participate, chiefly on Fifth Amendment grounds.

¶35    Van Haele continued to invoke the Fifth Amendment in refusing to admit guilt after his release from prison. The District Court found, after hearing testimony from several Montana specialists in the field of sex-offender treatment, that this refusal effectively disqualified him from participating in any of their certified outpatient programs, nor did Van Haele instance any other such program that would accept him under these circumstances.

¶36    Van Haele claims that the District Court violated his right not to incriminate himself by revoking the suspension of his sentence on the grounds that he neither would nor could fulfill the condition of his probation that he participate in outpatient sex-offender treatment. We disagree.

¶37    The District Court's March 12, 2002 Revocation Order recounts Van Haele's plea of guilty to the very offenses regarding which he now claims the right not to incriminate himself, and the explicit factual account of his commission of those crimes which he supplied in order to support the plea. It is therefore difficult to conceive how the right not to incriminate oneself could possibly avail the appellant, since he voluntarily and conclusively incriminated himself in the course of pleading guilty to the crimes for which

10

he was sentenced. His guilty plea itself, moreover, constituted a waiver of the right against self-incrimination regarding the charges to which he pled guilty, *see Boykin v. Alabama* (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, and it should be noted that Van Haele expressly waived his right not to incriminate himself at his change-of-plea hearing.

¶38    Van Haele's reliance on *State v. Imlay* (1991), 249 Mont. 82, 813 P.2d 979, and *State v. Fuller* (1996), 276 Mont. 155, 915 P.2d 809, is likewise misplaced. Imlay was tried and convicted of felony sexual assault. He testified at trial and denied having committed the assault. Imlay received a suspended sentence with a number of probationary conditions, including that he enroll and complete a sexual offender treatment program. Imlay enrolled in an outpatient program, but was unable to complete it because he would not admit committing the crimes for which he was convicted. The district court revoked Imlay's sentence and sent him to prison because he was unable to complete the program. We vacated the sentence, concluding that Imlay could not be punished for asserting his Fifth Amendment right against self-incrimination.

¶39    Unlike Imlay, Van Haele pled guilty to incest and sexual intercourse without consent. He admitted to the offenses and provided the District Court with a graphic account of those crimes when he pled guilty.

¶40    *Fuller* is similarly distinguishable. Fuller was tried and convicted of three counts of attempted sexual assault. As a condition of Fuller's suspended sentence, the district court ordered him to participate in an outpatient sex offender treatment program. While in the treatment program, Fuller admitted to committing several sexual offenses for which he had

11

not been charged, and the State later used that information to charge him with three additional offenses. Fuller moved to dismiss the charges, alleging that the State's actions violated his constitutional right not to incriminate himself. The district court denied the motion. Fuller pled guilty, but preserved his constitutional claim for appeal.

¶41 We held that the State improperly compelled Fuller to disclose past criminal acts in violation of his Fifth Amendment right against self-incrimination and, as a result, the State was prohibited from using any of the information elicited as the basis for a later, separate criminal prosecution.

¶42 In our case, there is no question either of compelling Van Haele to disclose his commission of sexual offenses for which he has not been charged, or of using such compelled disclosures against him. Van Haele persisted in refusing to admit guilt during treatment for offenses to which he had previously pled guilty before the District Court. We thus find *Fuller* to be irrelevant to the present case, and conclude that the District Court did not deprive Van Haele of his right against self-incrimination.

¶43 *4. Whether the District Court erred when it found that there was no deviation between the District Court's original oral sentencing order and its subsequent written sentencing order.*

¶44 We disposed of this issue in deciding the Issue Two. *See* ¶¶ 27-32, above.

¶45 *5. Whether the District Court impermissibly applied the law* ex post facto *by imposing on Van Haele's eligibility for probation the condition that he complete the first two phases of sexual offender treatment while in prison.*

¶46 Van Haele opens this section of his argument with the following passage:

The State took the position that the statute in effect in 1999 required completion of Phase I and Phase II Sex Offender Treatment Program. The statute in effect in 1991 simply stated that a convicted sex offender, under certain statutes, shall enroll in Phase I. The 1999 statute states that a convicted sex offender "shall complete Phase I . . . ."

¶47 He then asserts that "enforcing the 1999 statute against the defendant would be an *ex post facto* application of the law."

¶48 We note, first, that Van Haele identifies neither the "1991 statute" nor the "1999 statute" to which he refers, and so fails to conform to Rule 23(a)(4) of the Montana Rules of Appellate Procedure. That subsection reads, in relevant part:

The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, *with citations to the* authorities, *statutes*[,] and pages of the record relied on.

Rule 23(a)(4), M.R.App.P. (emphasis added).

¶49 Moreover, Van Haele has failed to cite to the portion of the record where the District Court applied this "1999 statute" in violation of the *ex post facto* doctrine. *See* Rule 23(a)(4), M.R.App.P. In fact, the record indicates that the District Court granted the State's amended revocation petition on the grounds that Van Haele would not be able to participate in an outpatient sexual offender treatment program. Van Haele's argument is thus both unsupported by citation and irrelevant to the disposition.

¶50 **6. Whether the District Court abused its discretion in admitting into evidence the sex offender risk assessments offered by the State without requiring such an evidentiary foundation as would meet the standard set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469.**

¶51 We review a district court's decision to admit or exclude evidence for abuse of discretion. *State v. Southern*, 1999 MT 94, ¶ 48, 294 Mont. 225, ¶ 48, 980 P.2d 3, ¶ 48.

¶52 On September 17, 2001, therapists from the prison sexual offender treatment program conducted a sex offender risk assessment of Van Haele. They determined that he posed a high risk of re-offending. Van Haele objected to the admission of this result on the grounds that the State had failed to establish for it the foundation required by Daubert. The District Court overruled the objection and admitted the result into evidence.

¶53 The United States Supreme Court in *Daubert* set forth several factors to guide trial courts in deciding whether to admit expert testimony under Rule 702 of the Federal Rules of Evidence. *Daubert*, 509 U.S. at 592-94, 113 S.Ct. at 2796-97, 125 L.Ed.2d at 482-83. We apply the *Daubert* test in reviewing determinations by the district courts of the admissibility of novel scientific evidence under our cognate Rule 702. *State v. Hocevar*, 2000 MT 157, ¶ 56, 300 Mont. 167, ¶ 56, 7 P.3d 329, ¶ 56; *Southern*, ¶ 55.

¶54 After much citation to legal authority, Van Haele's analysis consists, in its entirety, of the following: "The risk assessments didn't meet this standard." We do not consider this a sufficient basis upon which to rule that the District Court abused its discretion, and we decline to do so. *See also* Rule 23(a)(4), M.R.App.P.

¶55 Moreover, none of Van Haele's many legal references treats the application of Rule 702 and the *Daubert* test to probation revocation proceedings. This is not surprising, for the Montana Rules of Evidence do not in fact apply to such proceedings. Rule 101(c)(3),

14

M.R.Evid.; *State v. Nelson* (1987), 225 Mont. 215, 218, 731 P.2d 1299, 1302. The *Daubert* test, intended to elucidate the operation of Rule 702, is thus inapplicable to the present case.

¶56    **7. Whether the District Court erred in rejecting Van Haele's motion to dismiss for the denial of his right to a speedy hearing.**

¶57    Although Van Haele refers to our decision in *City of Billings v. Bruce*, 1998 MT 186, 290 Mont. 148, 965 P.2d 866, as setting forth "speedy trial analysis," he fails to substantiate his assertion that "[t]he speedy trial guarantees apply to petitions for revocation." Perhaps the "holdings of the Montana Supreme Court," based upon which Van Haele asserts that he "properly raised his claim of denial of a speedy hearing," provide support for his argument; which of our holdings these might be, however, Van Haele does not specify. Van Haele's analysis, moreover, pursuant to the holdings which he fails to cite, consists, in its entirety, of the following: "This necessitated a speedy trial analysis and it was error for the District Court to find 'no prejudice' without conducting same."

¶58    "This," apparently, is the "delay between [the] filing of the initial Petition for Revocation and hearing," which Van Haele reckons at 632 days. Van Haele also adduces the the period during which he was incarcerated as of November 20, 2001, which he calculates to be 557 days. Van Haele, however, cites neither legal authority nor any portion of the record that would support his calculation of the total delay.

¶59    We can thus find no basis herein upon which to reverse the District Court. *See also* Rule 23(a)(4), M.R.App.P.

¶60    **8. Whether the District Court erred in denying Van Haele's motion to withdraw his original plea of guilty.**

¶61   Van Haele argues that the District Court failed to advise him adequately of the consequences of his guilty plea. Specifically, Van Haele claims that he "was not advised at time of sentencing that his failure to complete a sexual offender program would deny him probation status." Van Haele claims that the District Court's omission entitles him to withdraw his guilty plea, and that the District Court erred in denying his motion to do so. We disagree.

¶62   With respect to an appeal from the denial of a motion to withdraw a guilty plea, we will review the district court's findings of fact to determine if they are clearly erroneous, and its conclusions of law to determine if they are correct. When the voluntariness of the plea is at issue, we will review that ultimate mixed question of law and fact *de novo*, to determine whether the trial court was correct in holding that the plea was voluntary. *State v. Warclub*, 2005 MT 149, ¶ 24, ___ Mont. ___, ¶ 24, ___ P.3d ___, ¶ 24.

¶63   We take issue with the factual predicate of Van Haele's argument, that it was his failure to complete prison sex-offender treatment which ultimately denied him admission to an outpatient treatment program. Rather, the District Court found that his recantation of his admission of guilt and his various behavioral problems placed insurmountable obstacles in the way of his acceptance into such a program, though it may be that Van Haele's failure to take advantage of the opportunity for sexual offender treatment which was offered him in prison contributed to his difficulties in this regard. The District Court, furthermore, found that he was no longer actively seeking outpatient treatment. Given the substantial supporting

16

testimony which the District Court heard at the revocation hearing conducted on November 20 and 21, 2001, we hold that the District Court did not clearly err in making these determinations.  Thus, we reject the factual basis of this argument.

¶64    We affirm.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE